## Coker *v.* Lewis *et al.**

(Division A. Jan. 7, 1924. Suggestion of Error Overruled April 14, 1924.)

[99 So. 561. No. 23303.]

1. TENANCY IN COMMON. *Purchase of common property by cotenant under superior lien creates trust available to other cotenant on contribution.*

Where one of two cotenants purchases the common property at a sale thereof under a lien superior to his and his cotenant's title thereto, he will hold the interest therein of his cotenant in trust for his benefit of which his cotenant can avail himself by contributing his proportion of the purchase money.

2. WITNESSES. *Testimony of cotenant inadmissible to enforce implied trust in his favor.*

Where A. and B. are cotenants of land that is sold under a lien superior to their title and purchased by C. under circumstances giving rise to an implied trust for the benefit of A., in which B., because of his cotenancy with A., has the right to share on the payment of his proportion of the purchase money which may be due from A. to C., B.'s claim is primarily against A., and in a suit by him after C.'s death against his heirs to enforce the trust to the extent of his interest in the land, in order to recover he must establish the trust in C. for A. and his right against A. to participate therein; consequently the trust cannot be proven by the testimony of A. for the reason that his own claim against the estate of the decedent would be thereby established and enforced to the extent of one-half interest therein. Section 1917, Code of 1906; section 1577, Hemingway's Code.

*Headnote 1. Tenancy in Common, 38 Cyc, pp. 40, 46; 2. Witnesses, 40 Cyc, p. 2286 (1925) Annotations).

APPEAL from chancery court of Hinds county.

HON. V. J. STRICKER, Chancellor.

Suit by J. C. Coker, Jr. against A. J. Lewis and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Howie & Howie,* and *D. C. Enochs,* for appellant.

The court erred in not permitting the father of complainant to testify, and in denying complainant relief. It goes without saying that Coker, Sr., by reason of his being a co-tenant with the complainant of said land, was disqualified to buy said land at the foreclosure sale, and thereby acquire the interest of the complainant. *Wyatt* v. *Wyatt,* 81 Miss. 219, 32 So. 317; *Beaman* v. *Beaman,* 90 Miss. 762, 44 So. 987; 3 Bobbs-Merrill Miss. Dig., 945 and 946.

And if Coker, Sr., procured Lewis, Sr., to buy the land at said foreclosure sale for him, as alleged in the bill of complaint, the situation is the same as if Coker, Sr., had himself purchased it, for what one does through another, he does himself.

After the testimony of A. J. Lewis, Jr., the complainant offered his father as a witness, when the defendants objected on the ground that he was disqualified under section 1917, Code 1906. The court below sustained the objection. Of course, we know that a person cannot testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person. The father of complainant could not testify in this case if the case were one by him to recover the land, or proceeds thereof. As a matter of fact the father claims no interest in the land whatever. And the claim, if such it may be called under the statute, of the complainant, is not one acquired by the complainant through the father, but one acquired independent of the father, and from complainant's mother.

The complainant inherited from his mother a half interest in the plantation subject to a deed of trust securing some four thousand dollars and interest. He says that the foreclosure of said deed of trust, and purchase of the land by A. J. Lewis, Sr., was but a payment of the indebtedness, and did not vest the said A. J. Lewis, Sr., with the title to his, complainant's half interest in the land because he says the purchase was but the purchase of the land by his father, his co-tenant. Now, the father knows these facts, which will establish complainant's case. These facts occurred when complainant was only one year, four months and eighteen days old. But the court below said that the father was prohibited from testifying under the statute, and sustained an objection to his doing so. We cannot understand how the father is prohibited from testifying in his son's case any more than any other person would be prohibited who knew the facts. In the first place, the father had quitclaimed his interest in the land. Again the father was not suing for any interest in the land, nor the son for any interest through the father. And finally as to the father, the foreclosure was valid since it was in accordance with the agreement of himself and A. J. Lewis, Sr.

We submit that if the land was purchased by A. J. Lewis, Sr., for the father of complainant, as is alleged in the bill, the purchase was but a satisfaction of the indebtedness as to the complainant, entitling the said Lewis, or his devisees, to reimbursement at the hands of the complainant for one-half thereof, less what may be due the complainant for rents and profits upon an accounting; and that the said devisees having passed the said land to an innocent purchaser for value, are liable to the complainant for its value in their hands, insofar as his interest is concerned, the same as if the land was still in their possession; that the father of complainant should have been permitted to testify to the facts relative to the foreclosure sale and purchase of the land by A. J. Lewis, Sr.; that complainant should have been de-

creed a one-half interest in the land, or proceeds thereof in the hands of the defendant devisees, less any sum that may be found due them by the complainant on an accounting.

*Wells, Stevens & Jones,* for appellees.

Here appellants would have the father of the minor take the stand many years after the death of A. J. Lewis and boldly testify that he, the father, was a party to a fraudulent conspiracy with the deceased to defraud his own child out of this property. To build up a case he would turn back the hands of time and testify to transactions which the witness had with A. J. Lewis in his lifetime.

We do not concede that even the testimony of the father, if competent, would render the foreclosure void. No irregularity in the sale is either charged in the bill, or proved, or undertaken to be proved by the testimony. The trust deed was a valid, subsisting, paramount lien outstanding at the time of the death of Mrs. Nettie Coker.

This testimony would be incompetent in this case, first, because it builds up a state of facts or transactions which the witness had with A. J. Lewis in his lifetime, and secondly, even though Mr. Lewis had agreed to lend J. C. Coker, Sr., the necessary money to buy the land at foreclosure, even the bill charges that the very purpose of the arrangement was to cut out the interest of the minor, and that Mr. Lewis absolutely refused to make the loan unless there was a sale under the trust deed. In other words, if it were possible to testify to the state of facts showing a resulting trust, the very allegations of the bill, and the testimony of the witness Coker, would make out a trust in favor of the father and not the son. A resulting trust would necessarily be bottomed upon the idea that the complainant furnished the consideration, and even upon the statement of the father, Lewis would be lending the money to the father and not the son, and

if there was any resulting trust it was in favor of the father and not the son.

But the main point we are here stressing is that this testimony is incompetent because it would build up a state of facts occurring in the lifetime of A. J. Lewis, and the necessary result of this state of facts, if it granted any relief whatever, would be to make J. C. Coker, Sr., at least an owner of an undivided one-half interest in the land sued for. The testimony was incompetent under section 1917, Code of 1906, section 1577, Hemingway's Code. It will be observed that this statute condemns the testimony not only of a witness who would establish his own claim or defense against the estate of a deceased person, but—"any claim he has transferred since the death of such decedent."

The necessary effect of the testimony of the witness would be to invalidate the foreclosure proceedings, and thereby cast the whole title upon father and son as coheirs of Mrs. Nettie Coker, and tenants in common of the premises sued for. All of the material transactions which the witness would swear to were transactions alleged to have been had with A. J. Lewis, whose voice has been silenced by death. It is the manifest purpose of the statute to close the mouth of the living when the dead can no longer speak.

As to the authorities, see: *Jones* v. *Sherman,* 56 Miss. 559, where Sherman claimed by assignment of a deed from one Brown and Brown was offered as a witness to prove title, and his testimony was held to be incompetent; *Burnett* v. *Smith,* 93 Miss. 566, "Where a father executed a deed conveying land to his daughter, and, after his death, his heirs other than the grantee sued to cancel it because of the father's mental incapacity and the daughter's undue influence over him, the grantee is an incompetent witness in her own behalf, under Code 1906, section 1917, providing that a person shall not testify as a witness to establish his own claim or defense against the estate of a decedent;" *Gibson* v. *Herrin,* 118 Miss. 1,

78 So. 946, where a landlord claimed certain mules and wagons, used by the defendant under a mortgage, after the death of the owner, and the court held that he was precluded from testifying to his claim; *Graham* v. *Taylor,* 117 Miss. 736, where one claimed to have married the deceased but was precluded from testifying to that fact in the proceeding determining her rights to his property; *Whitehead* v. *Kirk,* 104 Miss. 776, 61 So. 737 (suggestion of Error, 62 So. 432), where Kirk died leaving a will by which he undertook to devise all of his property to his three sisters, and his widow and sole heir at law contested the will and undertook to take the witness stand and testify to a state of facts that would establish the insanity, and therefore incompetency of Mr. Kirk to make a will. It was the effect of Mrs. Kirk's testimony that was reviewed at length by this court, which held the admission of same to be erroneous.

These decisions condemn the testimony of J. C. Coker, Sr., in the case at bar. He would build up a case by his oral testimony the effect of which would be to destroy the foreclosure of the trust deed. In the Whitehead case, Mrs. Kirk would get rid of the will of her husband by testimony as to a state of facts showing his incompetency to make a will. In the case at bar J. C. Coker would destroy the foreclosure by his oral testimony. It makes no difference that Mrs. Kirk was the sole heir at law of her husband, and it makes no difference here that J. C. Coker, Sr., is an heir at law of his wife, Mrs. Nettie Coker. Mrs. Kirk got by inheritance and so does both J. C. Coker, Sr., and his son in the instant case. It is perfectly manifest that the estate of A. J. Lewis is directly affected.

Title once acquired cannot be gotten rid of by abandonment, or by gift, and thereby circumvent the statute here under review. This was the express ruling of our court in the case of *Williams* v. *Harris,* 109 Miss. 304. We also refer to the case of *Fant* v. *Williams,* 118 Miss. 428, on the point that land once acquired by adverse pos-

session, or by proper title of any kind, cannot be abandoned so as to divest title.

Now in the case at bar, the complainant originally claimed title, and the whole title, to the lands involved in this suit, but later attempted to amend his bill so as to abandon the one-half interest which he had charged in the original bill to have been acquired by deed from his father, J. C. Coker, Sr. Neither the complainant nor his father could abandon a title in that way and avoid the very object of the statute making a witness incompetent.

Learned counsel argued and are compelled to take the position that Mr. Coker, Sr., was— ''Disqualified to buy said land at the foreclosure sale and thereby acquire the interest of the complainant,'' and cite *Wyatt* v. *Wyatt,* 81 Miss. 219, and *Beaman* v. *Beaman,* 90 Miss. 762, in support of the proposition that if one co-tenant purchases at a foreclosure sale he buys for the interest of his cotenant also. We do not challenge this rule of law, or question the authorities cited. But the very principles for which counsel contend show beyond question that if the foreclosure for any reason is void, or amounted to a redemption, it was void as to both Coker Sr., and Coker, Jr., or the redemption inured to the benefit of both parties jointly. It follows therefore that the father cannot testify in support of the equity of his son without at the same time supporting his own equity. See *Neblett* v. *Neblett,* 70 Miss. 572; *Buckingham* v. *Walker,* 48 Miss. 609.

II. It is manifest from the record that even though Mr. Lewis should be living today, and should be the owner of the premises involved, and should agree to reconvey now these lands in consideration of the indebtedness which Coker owed, that the indebtedness would now exceed the value of the lands, and the burden of the redemption would be much greater than the benefits to be derived. There is no equity in this suit and the very effort to show a trust is in the face of the law. It is here sought to establish by parol evidence the existence of

an express promise, or express trust, and to enforce this express trust as against the heirs of A. J. Lewis, Sr., and their grantees. We say that this cannot be done, and such express trust cannot be established by parol evidence. 3 Pomeroy's Equity Jurisprudence (4 Ed.), secs. 1006, 2223; *Anding* v. *Davis,* 38 Miss. 574; Perry on Trusts, sec. 206, and cases cited; *Miazza* v. *Yerger,* 53 Miss. 135; *Rutland* v. *Brister,* 53 Miss. 683.

The court will keep clearly in mind that it is nowhere alleged in this bill of complaint that A. J. Lewis, Sr., when he purchased this plantation at the trustee's sale, purchased the same with the money either of J. C. Coker, Sr., or J. C. Coker, Jr., or any third party, but the bill shows upon its face that the land was purchased with money belonging to A. J. Lewis, Sr. The only fraud undertaken to be charged in this bill of complaint is the charge that A. J. Lewis, Sr., failed to comply with his verbal agreement to reconvey the land to J. C. Coker, Sr. This is not such a fraud as authorizes equity to interfere. *Moore* v. *Jordan,* 65 Miss. 229; *Clearman* v. *Cotton,* 66 Miss. 467; *Berry* v. *Bullock,* 81 Miss. 463; *Aird* v. *Alexander,* 72 Miss. 358; *Horne* v. *Higgins,* 76 Miss. 813.

We submit, therefore, that a demurrer under the facts stated in this bill of complaint would be a proper way of raising the question, appearing as it does in the very face of the bill, and the only fraud charged being the failure to convey. From the earliest times, beginning with the ancient case of *Box* v. *Standford,* 13 Smedes and M. 93, this has been the rule.

Argued orally by *D. C. Enochs* and *V. R. Howie,* for appellant, and *W. C. Wells* and *J. Morgan Stevens,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree dismissing an original bill in equity in which the appellant is the complain-

ant and the appellees are the defendants. The error assigned is the exclusion of certain testimony offered by the appellant. The bill in substance alleges that Mrs. Nettie Coker died intestate in 1903 seized and possessed of a specifically described plantation, leaving as her sole heirs her husband, J. C. Coker, Sr., and the appellant, her son, an infant. The land was incumbered by a deed of trust executed by Mrs. Coker to Nicholson to secure the payment of an indebtedness evidenced by several promissory notes, all but one of which for four thousand dollars had been.paid prior to her death. After her death this deed of trust was foreclosed and the land was pur-- chased at the foreclosure sale by A. J. Lewis, who died in 1918, leaving a last will and testament by which he devised the land to his four children, defendants in the court below and the appellees here. These devisees afterward conveyed the land to F. C. Lotterhos, he paying therefor in cash and, insofar as appears from the allegations of the bill, without notice of any claim the appellant or his father may have thereto. The bill further alleges: That after the death of his wife, Coker, Sr., applied to A. J. Lewis for a loan of money sufficient to pay off the remaining note to Nicholson, but Lewis refused to lend him the money unless the deed of trust should be foreclosed and the property bought in by Coker, Sr., so as to eliminate the appellant's interest therein; he being a minor and unable to agree to the loan. That Nicholson offered to carry the loan further, but on Coker, Sr.'s, request foreclosed the deed of trust. That at the foreclosure sale the land was bid in by and the title thereto taken in the name of Lewis, so that he might hold it as a security for the payment of the money agreed to be advanced by him to Coker, Sr., with which to purchase it, and also as security for an indebtedness due to him by Coker, Sr., for supplies Lewis furnished him during former years with which to farm the land; Lewis promising to convey the land to Coker, Sr., on the payment to him of this indebtedness and the money expended

by him in purchasing the land. That Coker, Sr., remained on and farmed the land for several years, continuing during said time to obtain supplies and advances from said Lewis. That finally the relations between Coker, Sr., and Lewis were severed, and he moved off the land and Lewis took possession thereof. The bill further alleges that the appellant had obtained a quitclaim deed from his father to his interest in the land. Lotterhos was also made a party defendant to the bill. The appellant offered to refund the money paid by Lewis for the land, and the prayer of the bill in substance is for the cancellation of the Lotterhos deed, that appellant be decreed to be the owner of the land, and for an accounting. The bill was afterwards amended so as to eliminate any claim of the appellant's to an interest in the land under the deed executed to him by his father and to assert only a claim to a one-half interest therein which he inherited from his mother. The appellees answered denying the allegations of the bill. A demurrer to the bill by Lotterhos was sustained and the bill dismissed as to him, and the cause then proceeded to trial for an accounting by the appellees to the appellant for one-half of the money received by them for the land from Lotterhos.

On the trial the appellant offered but was not permitted to prove by Coker, Sr., the circumstances as alleged in the bill under which Lewis purchased the land at the sale thereof under the Nicholson deed of trust and the alleged agreement between himself and Lewis relative thereto; the ground of the exclusion of the testimony being that the witness would in giving it be establishing his own claim against the estate of a decedent. Section 1917, Code of 1906; Hemingway's Code, section 1577.

In order to determine whether the testimony of Coker, Sr., would have tended to establish his own claim against the estate of the decedent, Lewis, it will be necessary for us to determine the nature and origin of the claim of the appellant. On the death of Mrs. Coker the appellant and Coker, Sr., became tenants in common of

the land in controversy, and had Coker, Sr., purchased the land at the sale thereof under the Nicholson deed of trust the appellant would have had the right to share in the benefit thereof on the payment by him to Coker, Sr., of his proportion of the money expended by Coker, Sr., in making the purchase. *Smith* v. *McWhorter,* 74 Miss. 400, 20 So. 870; *Dickerson* v. *Weeks,* 106 Miss. 804, 64 So. 731; *Barksdale* v. *Learnard,* 112 Miss. 861, 73 So. 736. Had Lewis after purchasing the land under the circumstances sought to be proven conveyed it to Coker, Sr., the same result would have followed. In either event the appellant's claim would have been one against Coker, Sr., for a half interest in the land. Coker, Sr., was under no obligation to the appellant to pay off the Nicholson deed of trust and had the right to permit or, in the absence of fraud, to obtain its sale thereunder. Lewis, of course, was under no such obligation to the appellant, and the mere fact that he may have declined to lend Coker, Sr., the money with which to pay off the incumbrance on the land, but agreed to lend him the money with which to purchase the land at a sale under the incumbrance, the title to be taken in his name as a security for the loan, did not make him a trustee thereof for the appellant's benefit. He held it in trust, if in trust at all, but which we will assume he did for the sake of the argument, for Coker, Sr., against whom the appellant had a claim for a one-half interest therein. In order therefore for the appellant to recover here, he must establish: (1) That Lewis held the land in trust for Coker, Sr., and (2) that he (the appellant) has a claim against Coker, Sr., for a one-half interest therein. The appellant's claim is derived through the claim of Coker, Sr., which claim must be established before any claim of the appellant against Lewis can arise. It is true that the decree sought would not inure to the benefit of Coker, Sr.; nevertheless his claim to the extent of one-half thereof, to which the appellant claims the right to succeed, would thereby be established and enforced.

The exclusion of Coker, Sr.'s evidence is clearly within the spirit of the statute, and we think is also within its letter.

*Affirmed.*

### On Suggestion of Error.

Anderson, J.

It is argued that the foreclosure of the deed of trust was brought about by fraud participated in by A. J. Lewis, deceased. The contention is that the following evidence of J. C. Coker, Sr., ruled out by the court below, would have established that fact: Counsel for appellant, in stating to the court what he expected to prove by J. C. Coker, Sr., touching the proposition of fraud in the foreclosure of the deed used this language:

"That it was generally understood in the community by all people, and generally told to every one, that the only and sole purpose of the foreclosure was to get the property in such shape that he, J. C. Coker, Sr., would be able to operate it without interference on account of the minor."

Fraud must be directly and specifically charged and proven. There is nothing whatever in the evidence tendered and ruled out to connect A. J. Lewis, Sr., deceased, with having knowledge of or taking part in any fraud in the foreclosure which took place. The suggestion of error is overruled.

*Overruled.*