DAMPIER, et al. *v.* POLK, et al.

Apr. 21, 1952.

No. 38230 (58 So. (2d) 44)

66

Joe Dale, and Dent & Dent, for appellants.

Emmett P. Allen, and C. W. & R. M. Sullivan, for appellees.

**Holmes, J.**

Appellees sued to confirm their asserted title to 180 acres of land and an undivided one-fourth interest in the minerals therein, and to cancel the claims thereto of Plato Dampier, Larna Dampier, Mollie Dampier, I. F. Dale, Lawrence Polk, adult residents of Jefferson Davis County, and H. W. Dippel and M. A. Bletsch, nonresidents, all of whom were named defendants to the original bill. The appellees asserted title to the property under and by virtue of a purchase thereof at a foreclosure sale under a deed of trust executed by Plato Dampier and his wife to the Federal Land Bank. No answers were filed by Lawrence Polk and the nonresident defendants. I. F. Dale answered, asserting a deed of trust on a portion of the property executed to him by Larna Dampier and his wife, Mollie Dampier. The other defendants, Plato Dampier, Larna Dampier and wife, Mollie Dampier, filed their joint answers, denying the validity of the foreclosure of the aforesaid deed of trust, and denying that the complainants acquired title to the property at said

foreclosure sale, and pleading statutes of limitation and laches. These last named defendants incorporated in their answer a demurrer to the original bill, which demurrer the defendant, I. F. Dale, adopted in his answer, and made their answer a cross-bill, praying confirmation of title to the interests claimed by them respectively in the property.

Upon the trial of the cause, the chancellor overruled the demurrer and rendered a decree granting the prayer of the original bill and dismissing the cross-bill. From this decree, Plato Dampier, Larna Dampier, Mollie Dampier, and I. F. Dale, prosecute this appeal. There is no appeal by Lawrence Dampier and the nonresident defendants.

The case was tried on an agreed statement of facts, the pertinent facts on this appeal being as follows:

On November 3, 1924, Plato Dampier was the owner and in possession of 199 acres of land in Jefferson Davis County, described as SE¼ of NE¼ of Section 28, S½ of SE¼ of Section 28, NE¼ of SE¼ of Section 28, SW¼ of SW¼ less 1 acre in NE corner of Section 27, all in Township 9 N, Range 18W. On that date, Plato Dampier and his wife executed a deed of trust on said land to the Federal Land Bank to secure the payment of the sum of $1,000, payable in thirty-five annual installments of $65 each for the first thirty-four installments, and $62.50 for the last installment, the first annual installment being due on November 1, 1925. The installments due November 1, 1925, 1926, 1927, and 1928, were paid. Under the terms of the deed of trust the grantors therein obligated themselves to pay the indebtedness thereby secured as the same matured, and in addition thereto, to pay all taxes accruing on the land during the life of the deed of trust. The deed of trust contained also the following provision:

"The said bank or any holder of said indebtedness, if a person, acting personally; if a corporation, acting by and through either its president, vice-presi-

dent, or secretary, or other managing authority, is hereby fully authorized and empowered to appoint another and succeeding trustee in the place of the said above named trustee or his successors, if for any cause the trustee in this instrument, or his successors, shall not be present, able and willing to execute this trust; or if for any reason said holders acting through the above described officers, or any one of them, shall so desire, and such appointees shall have full power as trustee herein.''

The deed of trust also contained the further provision: ''In case of public sale hereunder, the holder or holders of this mortgage may purchase at the sale by making the highest cash bid for the property.''

On April 7, 1930, the land sold to the State for the nonpayment of taxes for the year 1929, and title was permitted to mature in the State without redemption. On September 7, 1931, the land again sold to the State for the non-payment of taxes for the year 1930, and title was permitted to mature in the State without redemption. On February 27, 1932, the executive committee of the Federal Land Bank determined that three installments due under the deed of trust were delinquent and that taxes for three years on the property were likewise delinquent and the committee directed a reappraisement of the property. As a result of this reappraisement, it was determined by the committee not to redeem the land from the tax sales and on March 3, 1932, the local association, namely, the Prentiss National Farm Loan Association, was advised that the loan was being called and that the capital stock in the amount of $50.00 issued in connection with the loan was being cancelled, and the local association was further advised to inform the bank if there was a redemption of the land before maturity ''in order that the loan may be reinstated and the bank proceed to collect for any other items that may be delinquent on the account''. The total indebtedness under the deed of trust at that time was $1,081.79. No notice of this exchange of

communications between the executive committee of the Federal Land Bank and the local association was communicated to the grantors in the deed of trust and no action was taken by the Federal Land Bank or the local association as against said grantors, nor was any demand made upon the grantors for the payment of the full amount of the indebtedness. No affirmative action of any kind was taken by either the Federal Land Bank or the local association to declare the entire indebtedness due and demand of the grantors in the deed of trust payment thereof.

On April 21, 1936, E. A. Burrow was issued a forfeited tax land patent by the State covering 19 acres of the entire 199 acres, said 19 acres being described as the SW¼ of the SW¼, less 1 acre, of Section 27, Township 9, Range 18. On September 29, 1936, Plato Dampier who with his wife were the grantors in the aforesaid deed of trust to the Federal Land Bank, obtained a forfeited tax land patent from the State covering the entire 199 acres, thus including the 19 acres to which Burrow had previously obtained a forfeited tax land patent. The validity of the forfeited tax land patent to Burrow is not questioned and the 19 acres covered by that patent are not involved in this litigation. On September 30, 1936, Plato Dampier and his wife, Mollie Dampier, conveyed by warranty deed to Larna Dampier 90 acres of the 180 acres here involved, the same being described as the NE¼ of the SE¼ and SE¼ of NE¼ of Section 28, and the West 10 acres in the SW¼ of the SW¼ of Section 27, all in Township 9, Range 18. Upon the execution of this deed, Larna went into the immediate possession of the land therein described and has since continued to occupy and live on the same. For convenience, this tract conveyed to Larna Dampier will be referred to as Tract I and the remaining 90 acres of the land will be referred to as Tract II. Plato Dampier has at all times continued to occupy and remain in possession of said Tract II. On May 1, 1940, Larna Dampier and wife executed a mineral

conveyance to O. C. Luper, purporting to convey an undivided one-half interest in Tract I, and Luper thereafter, on May 8, 1940, conveyed this undivided mineral interest to John D. Gholson. On May 7, 1940, Plato Dampier and wife and R. E. L. Polk executed an oil and gas lease to John D. Gholson on Tract II. On May 10, 1940 Plato Dampier and his wife executed a mineral conveyance to R. E. L. Polk purporting to convey an undivided one-half interest in Tract II. On May 10, 1940, Larna Dampier and wife executed to R. E. L. Polk an oil and gas lease on Tract I, which lease, on May 11, 1940, was assigned by R. E. L. Polk to John D. Gholson. On July 8, 1940, Larna Dampier and wife executed a mineral conveyence purporting to convey to R. E. L. Polk, an undivided one-fourth interest in Tract I. On July 6, 1944, the Federal Land Bank, by an instrument duly executed and recorded, appointed W. H. Livingston as substituted trustee in the aforesaid deed of trust, the instrument being in the following language: "The Federal Land Bank of New Orleans, being the present owner and holder of the indebtedness secured by a certain deed of trust, executed by Plato Dampier and wife, Maggie Dampier, appearing of record in deed of trust book 50, page 21 of the mortgage records in the office of the chancery clerk of Jefferson Davis County, does hereby constitute and appoint W. H. Livingston as trustee in said deed of trust in the place and stead of the present trustee therein."

On July 20, 1944, the Federal Land Bank, in consideration of the sum of $1500, transferred and assigned to R. E. L. Polk the aforesaid deed of trust and note executed to it by Plato Dampier and his wife. On August 25, 1944, R. E. L. Polk undertook to appoint C. W. Sullivan as trustee in said deed of trust by an instrument duly executed and recorded and reading as follows: "I, R. E. L. Polk, being the present owner and holder of the indebtedness secured by a certain deed of trust executed by Plato Dampier and his wife Maggie Dampier, appear-

ing of record in deed of trust book 50 at page 21 of the records of mortgages and deeds of trust on lands in the office of the chancery clerk of Jefferson Davis County, do hereby constitute and appoint C. W. Sullivan as trustee in said deed of trust in place and stead of the trustee therein named, and in the place and stead of any substituted trustee who may have been heretofore named by said Federal Land Bank of New Orleans, Louisiana, the former owner of said indebtedness.''

On October 25, 1946, W. H. Livingston as substituted trustee appointed by the Federal Land Bank and pursuant to due advertisement of the property for sale under the deed of trust offered said property for sale pursuant to the terms of the deed of trust and R. E. L. Polk became the purchaser thereof at said sale. Only the 180 acres here involved were sold, and the sale and conveyance by the trustee were made subject to oil leases thereon asserted by the Superior Oil Company. The original bill alleged, and it is not denied, that John D. Gholson paid one-half of the consideration for the transfer and assignment of the said note and deed of trust to R. E. L. Polk and that while the legal title was taken in Polk's name as the purchaser at the foreclosure sale, the equitable title to a one-half interest was vested in John D. Gholson, and the appellees are conceded to jointly own such title as was conveyed to Polk by the said substituted trustee. On November 23, 1937, Mollie Dampier, acting for her husband, Larna Dampier, applied to the Federal Land Bank for a loan on Tract I, which application, after an appraisement, was rejected by the bank. On April 19, 1948, Larna Dampier and his wife executed a deed of trust to I. F. Dale on the NE¼ of the SE¼ of Section 28, Township 9N. Range 18W. Maggie Dampier, the wife of Plato Dampier, died on September 9, 1943. At the time of the execution by Plato Dampier and his wife of the deed of trust to the Federal Land Bank, there was no oil or gas activity in Jefferson Davis County. Such activity developed, however, about the year 1941, and since that time the land involved has increased in value.

As a result of the conveyances hereinbefore set out, and other mineral conveyances executed by the several parties which it is unnecessary to mention, the appellant, Larna Dampier, who claims through a conveyance from Plato, executed subsequent to the execution of the aforesaid deed of trust to the Federal Land Bank, is asserting title to the surface of Tract I and an undivided fractional interest in the minerals therein, and the appellant Plato Dampier is asserting title to the surface of Tract II and an undivided fractional interest in the minerals therein.

The appellees are asserting title to the surface of both Tracts I and II and an undivided one-fourth interest in the minerals therein.

The rights of the appellant I. F. Dale will be determined by the disposition herein of the controversy between the other appellants and the appellees herein with respect to the surface of both Tract I and Tract II and an undivided one-fourth interest in the minerals therein.

It is first contended by the appellants that the foreclosure sale under the deed of trust to the Federal Land Bank was void for the reason that it was made by W. H. Livingston as substituted trustee, when subsequent to the appointment of the said Livingston, R. E. L. Polk, the holder of the deed of trust, had appointed C. W. Sullivan as substituted trustee. In the instrument undertaking to appoint C. W. Sullivan as substituted trustee, there was no recital, nor was there any proof, to the effect that W. H. Livingston, the previously appointed substituted trustee, was not present, able and willing to execute the trust. Polk, as the individual assignee and holder of the deed of trust, undertook to substitute Sullivan as trustee for no stated reason. This he had not the right or power to do under the provision of the deed of trust governing the appointment of a substituted trustee. He had no general option to name a substituted trustee. He was authorized to do so only for the reason that the previously named trustee was not present, willing, or able to serve. Under the controlling provision of the deed of trust, only

the bank or a corporate holder of the deed of trust was authorized at its option or for any cause or reason to appoint a substituted trustee. This Court so held in the cases of Webb v. Biles, 192 Miss. 474, 6 So. (2d) 117, and Biles v. Webb, 195 Miss. 369, 15 So. (2d) 362, in construing an identical provision governing the appointment of a substituted trustee. We are of the opinion, therefore, that the attempted appointment of C. W. Sullivan as substituted trustee was ineffective and that W. H. Livingston was the duly appointed and lawfully constituted substituted trustee at the time of the sale under the deed of trust. Hence, we find no invalidity in the sale because made by W. H. Livingston as substituted trustee.

Appellants also contend that the Federal Land Bank called the loan in 1932 and thereby accelerated the maturity of the debt, and that the bank's action amounted to an abandonment of the debt, and that thus the statute of limitation was put in operation, and that at the time of the foreclosure of the deed of trust, the entire indebtedness was barred by the statute of limitations. It is clear from the facts in this case that the Federal Land Bank took no affirmative action to declare the entire indebtedness due and made no demand upon the debtors for the payment of the entire indebtedness. Their dealings with respect to the loan in 1932 were entirely with the Prentiss National Farm Loan Association, which guaranteed the loan. No affirmative action was taken against the debtors by either the bank or the local association. Hence, we are of the opinion that there was no acceleration of the maturity of the loan such as was effective to put the statute of limitation in operation.

Mere declarations of the holder of an indebtedness to mature the same are insufficient to accelerate the maturity thereof. Such declarations must be followed by affirmative action. 36 Am. Jur., Par. 393; Thomas v. Fidelity Mutual Life Insurance Company, 196 Miss. 222, 15 So. (2d) 915. We think also that the facts in this case do not support the conclusion that there was an abandon-

ment of the loan by the bank. The mere fact that action was withheld against the debtors does not constitute abandonment.

Appellants also argue that appellees are precluded in this action because of laches. This Court has defined ██ ██ laches as not mere delay, but delay that works a disadvantage to another. Comans v. Tapley, 101 Miss. 203, 57 So. 567; Gulf Refining Company v. Travis, 201 Miss. 336, 29 So. (2d) 100, 30 So. (2d) 398. We do not find the essentials of laches present. No disadvantage because of delay has resulted to appellants. On the contrary, appellants derived advantage by reason of the fact that during the period of delay some of the installments of the indebtedness became barred by the statute of limitation. Other installments of the indebtedness have not yet matured by their terms. It is well recognized by the authorities that so long as the demands secured are not barred by the statute of limitation, the doctrine of laches is not applicable in the absence of a showing that the delay has worked injury or disadvantage to the party asserting the doctrine.

██ ██ The appellant further contends that Plato Dampier, following the issuance to him of the patent from the State in 1936, has continued to occupy the property in question, claiming the ownership thereof, and that he has acquired title thereto by adverse possession. We do not concur in this contention. Plato's action in obtaining from the State the forfeited tax land patent amounted only to a redemption of the land for the benefit of the mortgagee in the deed of trust. The obligation to pay the taxes was his obligation. It was likewise his obligation to redeem the land from the tax sales. Having failed to pay the taxes or redeem the land from the tax sales, his purchase thereafter from the State inured to the benefit of the mortgagee, the Federal Land Bank, and could not be asserted against the Bank or its assignee. It is well settled that the purchase of a tax title at a tax sale by the mortgagor who is under a duty to pay the taxes operates

simply as a payment of the taxes so far as affects the interest of the mortgagee or those claiming under him. ██ ██ Likewise, where the mortgagor purchases from the State the land which was sold to the State for the nonpayment of taxes and not redeemed, his action amounts merely to a redemption from the tax sale and inures to the benefit of the mortgagee. 36 Am. Jur., p. 815, Sec. 248; Vincent v. J. W. McClintock, Inc., 200 Miss. 445, 27 So. (2d) 681; Section 846, Mississippi Code of 1942; Martin v. Raleigh State Bank, 146 Miss. 1, 111 So. 448, 51 A. L. R. 442; Jackson v. Holt, 192 Miss. 702, 6 So. (2d) 915.

Appellants further contend that as grantees or successive grantees of Plato and Larna Dampier, the appellees became tenants in common in mineral interests with the Dampiers, and that the purchase of the property by Polk at the foreclosure sale inured to the benefit of the appellants. In dealing with this contention, we recognize the previous pronouncement of this Court that ██ ██ parties owning undivided interests in underlying minerals in land are cotenants. Wight v. Ingram-Day Lumber Co., 195 Miss. 823, 17 So. (2d) 196.

██ ██ It is, of course, generally agreed that where a confidential or fiduciary relationship exists between cotenants, it is ordinarily held to be inequitable to permit one without the consent of the others to buy in an outstanding adversary title and assert it for his exclusive benefit. This rule has been long recognized by this Court as indicated by the following cases: Fox v. Wilkins, 201 Miss. 78, 28 So. (2d) 577; Wyatt v. Wyatt, 81 Miss. 219, 32 So. 317; Beaman v. Beaman, 90 Miss. 762, 44 So. 987; Smith v. McWhorter, 74 Miss. 400, 20 So. 870; Walker v. Williams, 84 Miss. 392, 36 So. 450; Watson v. Vinson, 108 Miss. 600, 67 So. 61; Barksdale v. Learnard, 112 Miss 861, 73 So. 736; Coker v. Lewis, 135 Miss. 118, 99 So. 561; Gilchrist Fordney Co. v. Ezelle, 141 Miss. 124, 106 So. 269; Baker v. Richardson, 96 Miss. 394, 50 So. 447; Clausell v. Riley, 188 Miss. 647, 196 So. 245; Howard v. Wactor, 41 So. (2d) 259.

These cases, however, dealt with family disputes where the confidential relationship was clear, or dealt with litigants whose interest accrued under the same act or instrument. The general rule, however, is subject to limitations. It is inapplicable where the facts and circumstances negative the presumption of a confidential relation existing between the cotenants, or where their interests did not accrue under the same act or instrument. 14 Am. Jur., p. 122. In Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, the Court said:

"The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them, and has no application where the circumstances surrounding them negative any such relation, and show that they, though in law tenants in common, are not such in fact, and are asserting hostile claims against each other with reference to the common property."

In Collette v. Long, 179 Miss. 650, 176 So. 528, 529, it was held that the rule can not be extended beyond the mutual rights and duties of the cotenants, the court saying:  "If, strictly speaking, a fiduciary relationship exists between cotenants by reason of the mere fact that they are such (compare 62 C. J. 419, with Shelby v. Rhodes, 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, 1306), it can extend only to their mutual rights and duties."

Applying these limitations to the general rule, we examine the relation and the mutual rights and duties of the parties here. The debt secured by the deed of trust was the obligation of Plato Dampier. The appellees never assumed it and were under no obligation to discharge it. No mutual duties devolved upon the parties with respect to the debt or the common property. The deed of trust was a charge upon the common property prior to and at the time of the conveyances of mineral rights by Plato and all such conveyances were subject to

the deed of trust. If appellants and appellees, by virtue of the conveyances from Plato, were tenants in common, they became such in law but not in fact. They were clothed with no mutual rights and duties. Instead of a confidential and fiduciary relationship existing between them, they were asserting hostile claims against each other with respect to the common property. ▮▮ Appellees were claiming under the deed of trust. Appellants were claiming under and by virtue of Plato's purchase from the State and his continued occupancy and possession of the land and were claiming against the deed of trust. Their interests thus asserted did not accrue under the same act or instrument but accrued at different times and under different acts and instruments. Their estates were separately acquired and there was no joint possession. There was no relationship of mutual trust and confidence. It is not the mere fact of cotenancy that prevents one cotenant from purchasing an outstanding deed of trust on the common property but it is the existence of a confidential or fiduciary relationship between the co-tenants which would render it inequitable for him to do so. Shelby v. Rhodes, supra. And such relationhip can extend only to the mutual rights and duties of the co-tenants. Collette v. Long, supra. The prior decisions of this Court have recognized that the rule which prevents one tenant in common from purchasing an outstanding title is founded upon the existence of a confidential relation which extends to the mutual rights and duties of the cotenants. All of the cases in which this Court has applied the rule have been based upon the existence of such relationship. The Courts of other jurisdictions have so applied the rule. 14 Am. Jur., pp. 122-123; Fuller v. Dennistoun, 164 Minn. 160, 204 N. W. 958; Stevens v. Reynolds, 143 Ind. 467, 41 N. E. 931; Hodgson v. Federal Oil & Development Co., 274 U. S. 15, 47 S. Ct. 502, 71 L. Ed. 901, 54 A. L. R. 869; Brokaw v. Richardson, Tex. Civ. App., 255 S. W. 685; Freeman's Chancery, Sec. 1555.

The facts of this case show without dispute that the interests which appellants and appellees respectively claim in the common property accrued under separate acts and instruments; that there were no mutual rights and duties resting upon them; that they were claiming hostilely to each other; and that no relationship of mutual trust and confidence existed between them. Thus applying the principles adopted by the prior decisions of this Court as well as the Courts of other jurisdictions generally, we are of the opinion that appellees were not precluded from acquiring the deed of trust from the Federal Land Bank and becoming the purchasers at the foreclosure sale for their sole benefit.

After a careful review of all of the assignments of error, we find no basis of error in the chancellor's decision and accordingly the decree of the court below is affirmed.

Affirmed.

**McGehee, C. J.**, and **Alexander, Arrington**, and **Ethridge JJ.**, concur.