SUGG, Justice:
This is an appeal from a decree of the Chancery Court of Humphreys County, Mississippi, ordering partition in kind of land situated in said county described as lots 11, 12, 13 and 14 of section 30, township 13 north, range 4 west, containing approximately 148.5 acres.
F. L. Bryant, complainant below and appellee here, filed his original bill against C. J. Kennedy, defendant and cross-complainant below and appellant here, for the partition of the land above described. Bryant alleged that he and Kennedy each owned an undivided one-half interest in the land as tenants in common. Kennedy filed his answer, made his answer a cross-bill, and alleged that he had acquired the undivided one-half interest of Bryant by adverse possession.
The chancellor correctly found that Kennedy and Bryant were tenants in common; that there was no ouster of Bryant by Kennedy; that Kennedy did not acquire title by adverse possession against Bryant. The chancellor dismissed Kennedy’s cross-bill, sustained the prayer of the original bill, appointed three commissioners under the provisions of Mississippi Code 1942 Annotated *786 section 967, et seq. (Supp.1970) to partite the land in kind and retained the questions of reimbursement for taxes, sale of timber and allowance of appellee’s solicitor’s fee for determination when the report of the commissioners is submitted for confirmation.
The facts show that Bryant acquired title to the land on October 4, 1946, and conveyed an undivided one-half interest to Wilma J. Thomas by a warranty deed dated December 11, 1947. The one-half interest of Wilma J. Thomas descended on his death to Wilma J. Thomas, Jr., and Mrs. Josephine Collins as his heirs at law who conveyed their undivided one-half interest by quitclaim deed to Kennedy on March 26, 1954.
In 1952, before acquiring a deed to an undivided one-half interest in the land, Kennedy became interested in acquiring title to the property in question, which was uninhabited, wild land situated in a remote section of Humphreys County, Mississippi, suitable only for growing timber. Kennedy learned that there had been a tax sale for nonpayment of 1948 taxes, and after several trips to Jackson to the office of the State Land Commissioner and the office of the Attorney General, the State apparently struck the sale from the State records.
Kennedy then had an attorney prepare a certificate of title which showed that the land was owned, one-half by Bryant, and one-half by the grantors of Kennedy. After obtaining the deed from Wilma J. Thomas, Jr., and Mrs. Josephine Collins, Kennedy attempted to obtain a quitclaim deed from Bryant and offered him thirty dollars for such a quitclaim deed. Kennedy made a trip to Delhi, Louisiana, to talk to Bryant about acquiring his interest in the land, but Bryant declined to execute a quitclaim deed.
After his unsuccessful attempt to purchase the interest of Bryant, Kennedy testified that on July 24, 1954, he wrote Bryant a letter, putting Bryant on notice that he was holding the land adversely against him and claiming the land as his own. Bryant testified that he did not receive the letter and the chancellor obviously found in favor of Bryant on this issue.
Kennedy then caused the land to be assessed to himself and paid the taxes until this suit was filed in 1969. The possession of Kennedy consisted of having the land surveyed and the lines marked, the sale of some timber in 1957, stopping trespass on the land by adjoining landowners, securing the services of the State Forestry Commission with reference to the sale of timber on the land and improving the timber stand by taking employees on the land and cutting trees for this purpose.
He also claimed that he placed posted signs around the property, but this was sharply disputed as to the time when the posted signs were placed on the land.
In summary, Kennedy claims to have treated the land as any other full owner would treat land of a similar type.
Appellant assigns three errors, the first being that the lower court erred in holding that Kennedy, a cotenant, while trying to acquire the title of his fellow cotenant, and under circumstances which negated a confidential relationship between the cotenants, owed Bryant, the other co-tenant, a duty based upon the cotenancy relationship.
In support of this assignment of error appellant cites the case of Conner v. Conner, 238 Miss. 471, 119 So.2d 240 (1960). In this case the Court said:
It is true that the law recognizes that there exists between cotenants a peculiar relationship of mutual trust and confidence in respect of the common estate. 14 Am.Jur., 78, Cotenancy, par. 4. One tenant in common will not be permitted to acquire title to, or an interest or claim in, the common property inequitably solely for his own benefit or to the exclusion of his cotenants. * * * But *787 the relation of mutual trust and confidence existing between cotenants does not preclude them from contracting with each other in regard to all ordinary matters, including the subject matter of the cotenancy itself. Accordingly, it is well settled that in the absence of any prohibitory provisions in the instrument creating the relationship, one cotenant can purchase the share of another just as he would buy property from a stranger. 14 Am.Jur., 130, Cotenancy, par. 62, and cases cited. In transactions of sale of their interests, cotenants do not stand in a relationship of mutual trust and confidence toward each other, but deal as adverse parties. 86 C.J.S. Tenancy in Common § 71, p. 463. (238 Miss. at 514, 515, 119 So.2d at 259, 260)
The Conner case involved the negotiations for the sale of property between co-tenants and the Court held that the consideration paid by Governor Conner (Sennett Conner) for the interest of a fellow cotenant was adequate and fair, and in this regard the Court stated:
* * * Governor Conner was the managing cotenant in possession and control of the lands and the managing partner in the farming operations, and in both capacities he was under duty to act in the utmost good faith in his dealings with the other cotenants. But he was not precluded from purchasing the shares of the other cotenants; and he violated no duty owing by him to Jack when he purchased Jack’s undivided 14 interest in the property. * * * (238 Miss. at 515, 516, 119 So.2d at 260)
This case holds that one cotenant may deal as an adverse party in negotiating the purchase of the interest of another cotenant, but does not hold that this destroys the confidential relationship between cotenants or any duties based upon the cotenancy relationship.
Appellant also cites the case of McMahon v. McMahon, 247 Miss. 822, 157 So.2d 494 (1963). In the McMahon case the Court quoted with approval a portion of the opinion in the Conner case, supra, and held that one cotenant may purchase from another cotenant.
Appellant also relies on the case of Dampier v. Polk, 214 Miss. 65, 58 So.2d 44 (1952). The Court, in speaking of the relationship of the parties, stated:
* * * Instead of a confidential and fiduciary relationship existing between them, they were asserting hostile claims against each other with respect to the common property. Appellees were claiming under the deed of trust. Appellants were claiming under and by virtue of Plato’s purchase from the State and his continued occupancy and possession of the land and were claiming against the deed of trust. Their interests thus asserted did not accrue under the same act or instrument but accrued at different times and under different acts and instruments. Their estates were separately acquired and there was no joint possession. * * * (214 Miss. at 82, 58 So.2d at 51)
In the instant case, Kennedy was not asserting a hostile claim against Bryant by virtue of his deed to an undivided one-half interest in the land because the validity of his title to his undivided one-half interest was dependent upon Bryant’s previous sole ownership of the land.
The second and third assignments of error will be treated together because they raise substantially the same question. Appellant contends by these assignments of error that the court erred in finding that there was no ouster by Kennedy against Bryant followed by more than fifteen years open, adverse, hostile and.exclusive possession by Kennedy, and that the court erred in dismissing the cross-bill of Kennedy.
In the case of Quates v. Griffin, 239 So.2d 803 (Miss.1970), the Court, in discussing whether or not acts of possession by a cotenant in possession of property were *788 the equivalent of actual knowledge of an adverse claim, stated:
The remaining question, there being no contention that the claimants had actual knowledge of Griffin’s claim, is whether the acts of possession by Griffin were the equivalent of actual knowledge. Griffin’s possession for approximately thirty years can only be characterized as including every act of ownership that would normally be practiced by an actual owner on rural lands of this character. It included the payment of taxes, the improvement of the pasture, the repair of the houses, the repair and removal of fences, the cutting of timber for the construction of a pond, the construction of the pond, the grazing of cattle upon the land and maintaining tenants on the property. However, these acts are also those which are entirely consistent with the lawful acts of possession which may be exercised by a co-tenant in possession. In sum, the acts were not inconsistent with a cotenancy. The burden was upon Griffin, if he is to prevail in this suit, to prove an ouster by clear and convincing evidence. This burden of proof is difficult. * * * (Emphasis supplied) (239 So.2d at 810)
The reason for the rule is that since a confidential relationship exists between cotenants, a cotenant who desires to terminate the relationship has the remedy of partition, or sale for division of proceeds in proper cases, and rather than trying to oust his cotenant and claim adversely, he should deal openly and forthrightly with his cotenant and avail himself of such remedy.
We are of the opinion that the chancellor correctly applied the law to the facts in this case, and that the acts of Kennedy were consistent with the legal right of a cotenant upon the land and did not constitute the equivalent of actual knowledge on the part of Bryant so that the statute of limitations would begin to run. We, therefore, affirm the finding of the chancellor and remand this cause for further proceedings in the chancery court in accordance with the provisions of the decree of that court.
Affirmed and remanded.
RODGERS, P. J., and JONES, BRADY and SMITH, JJ., concur.