727 So.2d 743 (1998)
HANCOCK BANK, Appellant,
v.
Rebecca L. LADNER, Appellee.
No. 96-CA-01320 COA.
Court of Appeals of Mississippi.
November 24, 1998.
Rehearing Denied February 23, 1999.
*744 Joseph R. Meadows, Gulfport, Attorney for Appellant..
Chaliene Roemer, Attorney for Appellee.
Before BRIDGES, C.J., and HINKEBEIN and PAYNE, JJ.
HINKEBEIN, J., for the Court:
¶ 1. The Harrison County Chancery Court found that an antecedent tax sale and ultimate lapse of the statutory redemption period extinguished Hancock Bank's interim deed of trust on certain parcels of land, thereby precluding foreclosure. Aggrieved by this action, the institution appeals on the following grounds:
I. THE TRIAL COURT WAS IN ERROR FINDING THAT APPELLANT'S PURCHASE OF PROPERTY, WHICH WAS THE SUBJECT OF A TAX SALE TO THE CITY OF GULFPORT, MORE THAN ONE AN ONE-HALF YEARS AFTER THE TIME FOR REDEMPTION HAD EXPIRED, "WAS NOT TREATED AS A REDEMPTION CONTEMPLATED UNDER OUR STATUTORY FRAMEWORK."
II. THE TRIAL COURT WAS IN ERROR FAILING TO RECOGNIZE THAT A FIDUCIARY RELATIONSHIP EXISTED BETWEEN GULF STATES DEVELOPMENT, INC. AND APPELLANT.
III. THE TRIAL COURT WAS IN ERROR IN REQUIRING APPELLANT TO REFUND APPELLEE THE SUM OF $5,814.67.
¶ 2. Holding these assignments of error to be without merit, we affirm the judgment of the chancery court.

FACTS
¶ 3. In August 1989 four parcels of land in Gulfport, Mississippi were sold at a tax sale for unpaid 1988 ad valorem taxes assessed to Glen Ladner, the apparent owner of record at that time. As there were no individual bidders, the parcels were "struck off" to the city. See Miss.Code Ann. § 21-33-69 (Supp. 1996). Nevertheless, in November 1990 Hancock Bank accepted a deed of trust pledging the land as security for a promissory note from Gulf States Development, Inc. and Ladner, individually, as the corporation's president. Although no transfer date may be found in the record, the parties seem to agree that the corporation held title to the property at this point.
¶ 4. In August 1991 the tax sale matured without redemption as described in § 27-45-3 of the Mississippi Code. See also §§ 27-45-11, 21-33-61 (Supp.1996) (explaining that same procedure used for redemption of county tax sales should be used for municipal). However, approximately one and one-half years later Hancock Bank finally paid the taxes and directed the City of Gulfport to execute a quitclaim deed conveying the parcels back to Gulf States Development, Inc. Shortly thereafter, the bank began foreclosure proceedings.
¶ 5. During June of 1993 Ladner and Gulf States Development executed a quitclaim deed conveying the parcels to Ladner's exwife Rebecca who, in turn, paid Hancock Bank $5,814.67 to stop the foreclosure. However, in January 1994 proceedings began anew. One month later, Rebecca Ladner filed a motion for preliminary injunction *745 seeking postponement of foreclosure proceedings but by agreement with Hancock Bank's counsel, the request was subsequently dismissed until such time as the accompanying complaint might be heard on the merits. Finally, in June 1996 the chancellor did so and entered a declaratory judgment and order in Ms. Ladner's favor. It is that decision to which Hancock Bank assigns error in the present appeal.

ANALYSIS
I. THE TRIAL COURT WAS IN ERROR FINDING THAT APPELLANT'S PURCHASE OF PROPERTY, WHICH WAS THE SUBJECT OF A TAX SALE TO THE CITY OF GULFPORT, MORE THAN ONE AN ONE-HALF YEARS AFTER THE TIME FOR REDEMPTION HAD EXPIRED, "WAS NOT TREATED AS A REDEMPTION CONTEMPLATED UNDER OUR STATUTORY FRAMEWORK."
II. THE TRIAL COURT WAS IN ERROR FAILING TO RECOGNIZE THAT A FIDUCIARY RELATIONSHIP EXISTED BETWEEN GULF STATES DEVELOPMENT, INC. AND APPELLANT.
III. THE TRIAL COURT WAS IN ERROR IN REQUIRING APPELLANT TO REFUND APPELLEE THE SUM OF $5,814.67.
¶ 6. We will address Hancock Bank's assignments of error in combination as their substance becomes sharper when presented as the following two-part query: Absent any suggestion of fraud, does a valid tax sale that is not redeemed within the statutory two year time period extinguish the lien of a deed of trust executed in the interim? Does this change if the property falls, due to the mortgagee's intervention, into the original mortgagor's hands again? Because we agree with the chancellor's conclusion that only the former question should be answered in the affirmative, we leave his judgment in the instant case undisturbed.
¶ 7. The chancellor recognized that it was primarily Ladner's duty to ensure that the taxes were paid, especially since the deed of trust expressly required such. See Miss. Code Ann. § 27-41-11 (Supp.1996) (assigning duty of payment to owner). However, he also assigned some responsibility to the bank in the matter. First and most notably, he felt that the bank knew or should have known of the delinquency at the time the document was executed and should have recognized that such a tax lien is entitled by statute to preference over other encumbrances. See Miss.Code Ann. § 27-35-1 (Supp.1996) (expressly giving priority over "all judgments, executions, encumbrances and liens whensoever created ..."). Secondly, the bank subsequently received statutorily required notice of the tax sale and as the chancellor wrote in his opinion, could have "paid the taxes as permitted under the terms of its deed of trust, and also under the statutes, the amounts paid could have been recovered from the mortgagor. Or the deed of trust could have been foreclosed for failure to pay the taxes." See Miss.Code Ann. §§ 27-43-5, 27-43-7 (Supp.1996) (requiring that notice be given lienholders). Instead, the bank did nothing until the tax sale had long since matured, vesting title in the city of Gulfport. See Miss.Code Ann. § 21-33-75 (Supp.1996) (describing authority to take possession of and sell property when title vests via redemption). And even then, the organization specifically directed that the property be deeded back to the corporation rather than itself.
¶ 8. It appears that the bank took this action for fear of offending the fiduciary mortgagee/mortgagor relationship discussed in Perkins v. White, 208 Miss. 157, 43 So.2d 897 (1950), which the institution now cites. As stated in the case, "[t]he general rule is that a mortgagee may not, as long as the relationship of mortgagor and mortgagee exists, obtain title to the property by means of a tax sale, as against the mortgagor, at least where the mortgagee has merely a lien on the mortgaged property and where he can, if he chooses, pay the taxes upon default of the mortgagor and add the amount so paid to his claim." Perkins, 208 Miss. at 163, 43 So.2d at 898 (quoting 37 Am.Jur. Mortgages § 1163, p. 416). However, any transaction *746 which might have been executed during 1993 would not have fallen within Perkins' prohibition. Because the deed of trust as well as any fiduciary relationship stemming therefrom ceased to exist more than one and one-half years earlier, the bank need not have had the parcels deeded to Gulf States. The chancellor felt that the combination of this and the bank's previous blunders effectively extinguished the lien, precluding subsequent foreclosure against Ms. Ladner, in whose hands the property has ultimately fallen. His order that the money paid by Ms. Ladner on the loan be reimbursed was the natural result of this conclusion since, legally, the deed of trust did not exist at the time. We hold that this analysis to have been sound.
¶ 9. Generally, when the redemption period passes, a tax sale "becomes valid, and the title relates back to the date of the sale and takes precedence over any mortgage ... executed by the owner during such period of redemption." Russell Inv. Corporation v. Russell, 182 Miss. 385, 178 So. 815, 816 (1938) (emphasis added). However, Hancock Bank cites Dampier v. Polk, 214 Miss. 65, 58 So.2d 44 (1953), which seems to contradict this rule. In Dampier, the Mississippi Supreme Court held that "the purchase of a tax title at a tax sale by the mortgagor who is under a duty to pay the taxes operates simply as a payment of the taxes so far as affects the interest of the mortgagee or those claiming under him. Likewise, where the mortgagor purchases from the State the land which was sold to the State for the nonpayment of the taxes and not redeemed, his action amounts merely to a redemption from the tax sale and inures to the benefit of the mortgagee." Dampier, 214 Miss. at 79, 58 So.2d at 50. Therefore, the court, in order to prevent fraud, brushed aside the importance of the expired redemption period and its usual effect upon a prior lien in light of the fact that the original mortgagor re-acquired the property. While this departure seems reasonable in certain unusual situations, the facts of the Dampier case may be easily distinguished from those at hand. The Dampier court's refusal to place any responsibility for the situation at the mortgagee's feet seems inappropriate where, as here, in addition to allowing the redemption period to pass, the bank (1) accepted the deed of trust after a tax sale had already taken place, and (2) actually orchestrated the transaction by which the parcels were ultimately regained. On those facts, there has not been, nor could there be, any allegation of fraud on the part of Ladner, the corporation, or his former wife.
¶ 10. As the chancellor suggested, Hancock Bank had countless opportunities during the course of these events to protect its lien and failed to act prudently at each turn. We therefore hold each of the bank's assignments of error to be without merit.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., and COLEMAN, DIAZ, KING, and PAYNE, JJ., concur.
SOUTHWICK, J., dissents with separate written opinion joined by McMILLIN, P.J., and HERRING, J.
THOMAS, P.J., NOT PARTICIPATING.
SOUTHWICK, J., dissenting:
¶ 12. With respect for the opinion of my colleagues, I must dissent.
¶ 13. In my view, the important facts are first, that this landowner allowed the property to be sold for unpaid ad valorem taxes. Second, the landowner then entered a deed of trust on that same property. The final relevant fact is that the same landowner then reacquired the property by what is in effect the redemption from the tax sale. The result of those three events, in my view, is that the reacquisition inures to the benefit of the holder of the deed of trust. The supreme court has never allowed a landowner intentionally to cancel a security interest by purchasing his own property at a tax sale. The only difference here is that the cancellation would be the result of the lender's trying to cure the tax default. To me that is even less reason to allow cancellation.
*747 ¶ 14. The majority acknowledges that if either a mortgagor or a mortgagee redeems the property from a tax sale, that redemption is for the benefit of both debtor and creditor. A debtor cannot cancel a lien and a creditor cannot collect a loan by either party's purchase at the original sale or during the period of redemption. When such a purchase occurs the status quo of borrower and lender is renewed. See, e.g., Perkins v. White, 208 Miss. 157, 163, 43 So.2d 897, 898 (1950).
¶ 15. I find that the supreme court has also addressed the situation in which one of the two parties (debtor or creditor) purchases the property after the passage of the time for redemption. One case held that when the property was struck-off to the State for unpaid county taxes and the period of redemption thereafter passed, the land "was freed thereby" from the encumbrances on it. Stuart v. Pickett, 193 Miss. 455, 459, 10 So.2d 207 (1942). Under that rule, the State could grant a forfeited tax land patent to almost anyone in Mississippi and the property would be unencumbered. However, if the State conveyed the property back to the original owner after the period of redemption, "the status quo ... was restored." Id. The status quo, of course, was the existence of a lien. The only difference here is that one party, Hancock Bank, paid the money necessary to purchase while the other party became the grantee named in the deed. That should not lead to a different result.
¶ 16. The principal case relied upon by Hancock Bank is also helpful. Dampier v. Polk, 214 Miss. 65, 58 So.2d 44 (1952). Five years after a landowner gave a deed of trust to a bank, the land sold to the State for unpaid taxes. The "title was permitted to mature in the State without redemption." Id. at 73, 58 So.2d 44. Unlike the present case in which Hancock Bank may have overlooked the need to redeem from the city taxes after having already paid the county taxes, in Dampier the bank made a business decision not to redeem. Id. Six years after the tax sale, the original debtor was granted a forfeited tax land patent. The court found that the original debtor's "action in obtaining from the State the forfeited tax land patent amounted only to a redemption of the land for the benefit of the mortgagee in the deed of trust." Id. at 79, 58 So.2d 44.
¶ 17. The court in Dampier made no distinction between, on the one hand, a payment of taxes and penalties during the period of redemption, and on the other, a purchase after the redemption period had passed. Obtaining the municipal equivalent of a forfeited tax land patent is the most that occurred here. The majority distinguishes Dampier by calling it a "departure" from the normal rule that only applies in an "unusual situation." The Dampier court gave no indication that it was departing from the usual rule. The majority acknowledges that the "normal" rule is that the purchase by either the debtor or creditor at a tax sale or by redemption is for the benefit of both. Those events could be seen as the first two of the three time-periods for purchase, i.e., at the original sale, during the period to redeem, and after title has matured in the government. Dampier says the rule is still the same even when the purchase occurs after the time for redemption. That not only is the settled rule according to Dampier and the cases cited in it, it also seems equitable.
¶ 18. Only one case is cited to support the contrary. Russell Inv. Corp. v. Russell, 182 Miss. 385, 178 So. 815 (1938). A new two year statute of limitations for suing to set aside tax sales was being interpreted. Id. at 407, 178 So. 815. As a preliminary matter the court held that once the period for redemption had passed, a tax sale becomes final. Title conveyed by the State "takes precedence over any mortgage ... executed by the owner during the period of redemption." Id. at 408, 178 So. 815. That is the same general rule as Stuart, decided four years later. The Stuart court held, though, that an exception arose when either the landowner or the holder of a lien was the purchaser. In that event, "the status quo ... was restored." Stuart, 193 Miss. at 459, 10 So.2d 207.
¶ 19. The Russell case is a straightforward contest between the former owner who lost at tax sale and the purchaser of a forfeited tax land patent after the period of redemption had passed. Russell, 182 Miss at 411, 178 So. 815. The continuing relationship between *748 the mortgagor and mortgagee at the time of a tax sale was not a question.
¶ 20. The majority makes the equivalent of an unclean hands finding against Hancock Bank so that Dampier does not apply. It is said that the bank did not timely redeem and actually "orchestrated the transaction" by which the tax deed was given to the debtor rather than to itself. As to letting the period of redemption pass without protecting itself, that is always the case in these suits or else the issue would not arise. It did not prevent a revival of the status quo ante in Dampier or in Stuart. It should not here. The second factor, that the bank caused the deed to be given to its debtor, appears to be good faith and hardly an equitable reason not to apply the normal rule.
¶ 21. I would reverse and render.
McMILLIN, P.J., and HERRING, J., join this separate opinion.