CONNER, et al. *v.* CONNER, et al.

No. 41282 March 28, 1960 119 So. 2d 240

472

474

*Satterfield, Shell, Williams & Buford,* Jackson, for appellants.

*Wells, Thomas & Wells, Milton H. Mitchell,* Jackson, for appellees.

476

APPELLANTS IN REPLY.

Kyle, J.

This case is before us on appeal by Dr. Oscar W. Conner, an original defendant and cross complainant in the court below, and Mrs. Maude Conner and Mrs. Frances Conner Wright, Mrs. Jacquelyn Conner Galloway and Jack Michael Conner, surviving widow and children of W. F. Conner, deceased, intervening defendants and cross complainants in the court below, from a decree of the Chancery Court of Covington County rendered in favor of Mrs. Alma G. Conner and Lady Rachel Conner Biggs, surviving widow and only child of Martin Sennett Conner, deceased, complainants and cross defendants in the court below: (1) Confirming the title of the complainants in and to an undivided 21/32 interest in approximately 2600 acres of land, situated in Covington County, and declaring the said defendant, Dr. Oscar W. Conner, to be the owner of the remaining undivided 11/32 interest in said lands; (2) cancelling all claims of title asserted

by the defendants, intervenors and cross complainants in and to the said undivided 21/32 interest in said lands owned by the complainants; (3) ordering that a partition be made of the above mentioned lands among the said cotenants according to their respective interests; (4) vesting in the complainants and the defendant, Dr. Oscar W. Conner, according to their respective interests, title to 1149 shares of the capital stock of the First National Bank of Hattiesburg, Mississippi, standing on the books of said bank in the name of Sennett Conner, as the owner thereof, at the time of his death; (5) directing the sale of certain jewelry owned by Mrs. O. W. Conner, Sr., now deceased, at the time of her death, for a division of the proceeds among the heirs of the said Mrs. O. W. Conner, Sr., according to their respective interests; (6) appointing a special master for the statement of an account of all rents, issues and profits received for or on behalf of the Conner Company or the Conner Trust, by Sennett Conner, Mrs. Alma G. Conner, Lady Rachel Conner Biggs, and Dr. Oscar W. Conner, individually or as of The Conner Trust, or any one or more of them, in connection with the operation of the above mentioned properties, and the indebtedness of any one or more of them to the other or others; and (7) dismissing with prejudice the cross bill of Mrs. O. S. Mayfield, intervenor and cross complainant, and the cross bills of Mrs. W. F. Conner, Frances Conner Wright, Jacquelyn Conner (now Jacquelyn Conner Galloway) and Jack Michael Conner, intervenors and cross complainants, except as to the apportionment of the proceeds from the sale of the jewelry referred to above, and dismissing with prejudice the cross bill of Dr. Oscar W. Conner, defendant and cross complainant, except as to the relief accorded him in said decree.

The record in this case shows that O. W. Conner, Sr., died intestate on August 4, 1923, and that he left surviving him, as his only heirs at law, his widow, Mrs. O. W. Conner and four children, namely, Martin Sennett Con-

ner, W. F. Conner, who is referred to in the record as
"Jack" Conner, Dr. Oscar W. Conner and Mrs. O. S.
Mayfield, also known as "Mrs. Bernice Conner May-
field", all of whom were adults; that the said O. W. Con-
ner, Sr., left an estate, which consisted of personal prop-
erty, the value of which is not disclosed by the record, and
also approximately 2600 acres of land, situated in Cov-
ington County, Mississippi, which was encumbered by
three mortgage deeds of trust given to secure indebted-
ness owing to the Federal Land Bank of New Orleans
aggregating the principal sum of approximately $25,000.

The record shows that the said Martin Sennett Con-
ner, who will be referred to hereinafter as "Sennett Con-
ner" and as "Governor Conner", was duly appointed
administrator of said estate by a proper decree of the
Chancery Court of Covington County rendered on Au-
gust 18, 1923; that the administration of said estate was
completed about the end of the year 1926; and that a
decree was entered by the chancellor on January 15, 1927,
finally discharging the administrator and his bondsmen.
That decree, a copy of which appears in the record which
we have before us on this appeal, recites that the cause
was heard in vacation on petition of the administrator,
joined in by all distributees of said estate, namely, Mrs.
O. W. Conner, Sennett Conner, Mrs. O. S. Mayfield, W.
F. Conner and O. W. Conner, Jr., all of whom were of
legal age. The decree recites a finding by the court that
all State and Federal estate taxes and all probated claims
had been fully paid, and that the time for probating
claims had expired; that the acts and accounts of the
administrator should be ratified and confirmed; and that
the administration should be terminated and the adminis-
trator and his bondsmen discharged. It was therefore
ordered that the administrator be authorized and direct-
ed to assign, transfer and convey to Sennett Conner, in-
dividually, all judgments, notes, accounts and choses in
action belonging to the estate; that all accounts and ex-
penditures, and all acts and deeds made and done by the

administrator during the course of the administration be ratified and confirmed, and that the administrator and his bondsmen be discharged from further liability. By a separate decree of the same date it was further ordered that the administrator be empowered to transfer to Sennett Conner, individually 100 shares of capital stock of the First National Bank of Hattiesburg, Mississippi, then held in the name of the deceased. That decree recited a finding by the court that it was the desire of all distributees that the 100 shares of bank stock belonging to the estate should be transferred to Sennett Conner, individually.

The record also shows that on February 9, 1927, Mrs. O. S. Mayfield, for a valuable consideration, conveyed by warranty deed her interest in all lands inherited by her from her father, and all of her interest in all chattels, choses in action, and other personal property belonging to the estate of O. W. Conner, deceased, to Mrs. O. W. Conner, Sennett Conner, W. F. Conner and O. W. Conner, Jr. The deed was filed for record on February 11, 1927. On January 3, 1930, W. F. Conner, who, as stated above, is referred to in the record as "Jack" Conner, conveyed to Sennett Conner, for a consideration of $5,000, all of his interest in the above mentioned lands, and all his interest in all personal property, accounts and assets of The Conner Company. The deed was an absolute conveyance on its face and Sennett Conner's cancelled check for the $5,000 appears in the record before us on this appeal. The deed was filed for record on January 20, 1930. Mrs. O. W. Conner, Sr., died intestate on or about August 15, 1937, leaving as her only heirs her four children, Sennett Conner, Mrs. O. S. Mayfield, Dr. O. W. Conner, Jr., and W. F. Conner, each of whom inherited a ¼ interest in her estate; and on August 30, 1937, Mrs. O. S. Mayfield conveyed to Sennett Conner by warranty deed all the interest inherited by her from her mother, Mrs. O. W. Conner, deceased, or otherwise belonging to her, in the above mentioned lands, and also,

"all personal property of whatsoever kind belonging to the Conner Co."

The record shows that W. F. Conner died intestate on June 27, 1941, leaving as his only heirs his widow, Mrs. Maude Conner and three children, namely, Frances Conner, who is also referred to in the record as "Mrs. Frances Conner Wright," an adult, and Jacquelyn Conner and Jack Michael Conner, minors at the time of their father's death. At the time of his death W. F. Conner was the owner of the undivided 1/16 interest in the above mentioned lands, which he had inherited from his mother, and that interest passed by inheritance to his surviving widow and the three children mentioned above. On January 3, 1942, Mrs. Maude Conner and Mary Frances Conner executed a special warranty deed conveying their interests in the above mentioned lands to Sennett Conner and O. W. Conner, Jr. The deed recited a valuable consideration, the receipt of which was acknowledged. On January 15, 1942, S. O. Herrington, special commissioner of the Chancery Court of Covington County, pursuant to authority conferred upon him by a decree of said court rendered on January 13, 1942, in Cause No. 715, as shown on the General Docket of said court, for a consideration of $550 "cash in hand paid, the receipt of which is hereby acknowledged," sold and conveyed to Sennett Conner and O. W. Conner, Jr., subject to the liens existing against said lands, all the interests of Jacquelyn Conner and Jack Michael Conner, minors, in said lands, being the interests inherited by them from their father, W. F. Conner, deceased; and a decree was entered on January 24, 1942, approving said sale. The decree recited that the provisions of the former decree directing the sale had been fully complied with, and that the purchase price had been paid to the commissioner; and a receipt dated January 15, 1942, signed by Mrs. Maude Conner, as mother and next friend of said minors, acknowledging the receipt from S. O. Herrington, special commissioner, of the sum of $275 for the use and benefit of Jacquelyn

Conner, a minor, and $275 for the use and benefit of Jack Michael Conner, a minor, appears in the record.

The record shows that after the execution of the above mentioned deeds, all of which had been duly recorded, the record title to said lands was vested in Sennett Conner, as the owner of an undivided 21/32 interest in said lands, and Dr. O. W. Conner, as the owner of an undivided 11/32 interest in said lands. The record also shows that on October 25, 1943, Governor Conner and Dr. Oscar W. Conner, Jr., executed in duplicate original copies an instrument entitled "Memorandum of Agreement", relating to the management of the properties owned by them, in case of the death of either. Dr. Conner was in the Military Service at that time with the rank of major, and was on duty with the 31st Division Headquarters at Camp Pickett, Virginia, awaiting an assignment for overseas service. Both original copies of the Memorandum of Agreement were acknowledged, but neither of the executed copies was filed for record during the lifetime of Governor Conner. The original or ribbon copy of the Memorandum of Agreement was found in the papers of Governor Conner after his death. The duplicate executed copy had been retained by Dr. Conner, and was filed for record on October 4, 1950.

The record shows that Governor Conner became totally disabled in 1946, and died intestate on September 16, 1950, leaving as his only heirs Mrs. Alma G. Conner, surviving widow, and Lady Rachel Conner Biggs, his only child; and that Mrs. Alma G. Conner qualified as administratrix of his estate.

The record shows that Governor Conner filed partnership returns of income for The Conner Company with the Collector of Internal Revenue for the calendar years 1937 through 1948. The returns for the calendar years 1937 through 1945 were in Governor Conner's handwriting. Likewise state income tax returns for The Conner Company were filed for the calendar years 1938 through 1948. The retained copies of the returns, both Federal

and State, were found among the papers and effects of Governor Conner after his death by Mr. Robert Biggs, his son-in-law, and are made a part of the record on this appeal. The returns show the names of the partners and the respective interests of the partners in the net income or losses reported, as follows: 1937, Mrs. O. W. Conner and O. W. Conner, Jr., each a ¼ interest, and Sennett Conner, a ½ interest, in a net income; 1938, Sennett Conner a ⅝ interest, O. W. Conner, Jr., a 5/16 interest, and W. F. Conner a 1/16 interest, in a net loss; 1939, the same partners and interests in a net loss; 1940, the same partners and interests in a net loss; 1941, Sennett Conner a 21/32 interest, and O. W. Conner, Jr., a 11/32 interest, in a net loss; 1942, the same partners and the same interests in a net loss; 1944, 1945, 1946, 1947 and 1948 (in each of which years a net loss was shown), Sennett Conner a 21/32 interest, and O. W. Conner a 11/32 interest in a net loss.

The original bill of complaint in this cause was filed by Mrs. Alma G. Conner and Lady Rachel Conner Biggs, as complainants, on September 5, 1956, against Dr. Oscar W. Conner, Phillips Petroleum Company, The Texas Company, the State Highway Commission of Mississippi, B. F. Banahan and Grady Morgan, as defendants. A motion for a bill of particulars was filed by Dr. Oscar W. Conner, one of the defendants on October 9, 1956. The motion was sustained, and the complainants were granted leave to file an amended bill of complaint. The amended bill of complaint was filed on October 30, 1956.

In the amended bill of complaint the complainants alleged that they were the owners of an undivided 21/32 interest in the 2600 acres of land described therein; each owning an undivided 21/64 interest, and that the defendant, Dr. Oscar W. Conner, was the owner of an undivided 11/32 interest in said lands; that the complainants had acquired their interest in said lands by inheritance from Martin Sennett Conner, deceased, the husband and father of the complainants, who was the owner of an un-

divided 21/32 interest in said lands at the time of his death. The complainants deraigned their title to said land from O. W. Conner, Sr., who was the common source of title through whom the complainants and the said defendant, Dr. Oscar W. Conner, claimed title.

The complainants alleged that the said Sennett Conner died intestate on September 16, 1950, leaving as his only heirs at law the complainants, Mrs. Alma G. Conner, his widow, and Lady Rachel Conner Biggs, his daughter; that after the death of the said Sennett Conner, the defendant, Dr. Oscar W. Conner, Jr., took over the management and operation of the property owned by the said Dr. Oscar W. Conner, Jr., and the said Sennett Conner, as cotenants, and for a one-year period accounted to the complainants for their 21/32 share of the income, but since the end of said one-year period the said defendant, Dr. Oscar W. Conner, Jr., by his acts had indicated that he believed that he was the owner in fee simple of said property, being the lands described in said amended bill of complaint, under and by virtue of the terms of a certain Memorandum of Agreement executed by the said Sennett Conner and the said defendant, Dr. Oscar W. Conner, on October 25, 1943, a copy of which was attached to the complainants' amended bill, and that the complainants owned neither an undivided 21/32 fee simple interest in said lands nor any equitable interest therein; and that the said defendant, since the expiration of said one-year period, had wholly failed to account to the complainants for the income received from said lands.

The complainants further alleged that said defendant, without the knowledge or consent of the complainants, had leased certain portions of said lands for oil, gas and mineral exploration and production; that said defendant had executed two such leases to Phillips Petroleum Company and another such lease to B. F. Banahan, who had assigned the same to the Texas Company; that the said defendant had sold certain timber from said lands to Grady Morgan, and had in his possession the proceeds

derived from said timber sales; and that said defendant had also sold a strip of land to the Mississippi State Highway Commission to be used as a right of way for the Seminary-Ellisville State Highway, and had accepted, in his own name, title to a strip of land conveyed to him by Covington County, in consideration of the execution by him of said right of way deed to the State Highway Commission.

The complainants further alleged that the above mentioned Memorandum of Agreement, dated October 25, 1943, to the extent that it purported to show, as claimed by the defendant, Dr. Oscar W. Conner, Jr., that the complainants had no right, title or interest, legal or equitable, in and to the lands and other property therein described, and the claims of the defendant thereunder, should be cancelled as clouds on the title of the complainants. The complainants also charged that said instrument was testamentary in character, and in their opinion void and of no effect. The complainants further alleged, as a plea in the alternative, that by their practical construction of said instrument for at least one year subsequent to the death of the said Sennett Conner, the defendant Oscar W. Conner, Jr., and the complainants had construed said instrument as being effective to the extent of conferring upon the defendant, Dr. Oscar W. Conner, Jr., powers in the nature of those conferred upon a trustee or managing partner to operate and manage the 21/32 interest of the complainants until the debts of the Conner Company were paid; that the defendant had in his possession net funds sufficient in amount to liquidate all of said debts and obligations, and hence no necessity existed for the defendant to remain quasi-trustee or managing partner. The complainants further alleged that the complainants and the defendants owned said lands as tenants in common, and that complainants were entitled to a partition of said lands in kind.

The complainants further alleged in their bill of complaint, on information and belief, that the partnership

between the defendant Dr. Oscar W. Conner and the complainants' intestate was formed sometime prior to October 1945; that the complainants had no information as to the terms of said partnership agreement; that the sum of $10,745.50 had come into the hands of the complainants by way of mineral sales, delayed rentals and fire insurance proceeds, which were payable to their intestate for the partnership, and from that sum the complainants had deducted the sum of $1,418.20, which was due and owing by the Conner Company to the complainant, Mrs. Alma G. Conner, and likewise the sum of $8,411.28 which was due and owing by the Conner Company to the complainants' intestate; and that at the time of the filing of the bill of complaint the complainants were holding the sum of $3,665.05 to await the result of an accounting between them and the defendant, Dr. Oscar W. Conner.

The complainants further alleged that they were holding and claimed, in their own right, as their sole property, 1149 shares of the capital stock of the First National Bank of Hattiesburg, which shares belonged to the estate of the complainants' intestate as the owner of the 100 shares of the original capital stock of said bank set apart to the said Sennett Conner by a decree of the chancery court entered on January 15, 1927, in Cause No. 3940, styled Estate of O. W. Conner, Deceased. The complainants also alleged that they had received, since the death of their intestate, the sum of $2,409.77, as dividends from said stock, and sale rights to subscribe for fractional shares, which the complainants claimed as their own property; and that the complainants desired an accounting as to the value of the interests of the respective partners who were doing business at the time of the death of their intestate as "The Conner Company."

The complainants prayed:

1. That the court by proper decree cancel as a cloud upon their title to an undivided 12/32 interest in the above mentioned lands and other property described therein, and hold void and of no effect, the Memorandum

of Agreement entered into by and between Sennett Conner and O. W. Conner on October 25, 1943, and all other assertions of title, if any, made by the defendant, Dr. Oscar W. Conner, in derogation of the complainants' title.

2. That the court cancel as a cloud, and hold void and of no effect, the oil, gas and mineral leases executed by the defendant, Dr. Oscar W. Conner, and presently owned by the Phillips Petroleum Company and The Texas Company, as to the 21/32 interest therein owned by the complainants.

3. That the court grant to the complainants a personal decree in the form of a money judgment against the defendants, Dr. Oscar W. Conner, and the defendant, Grady Morgan, for an amount equal to a 21/32 part of the total amounts received by the defendants for the timber removed from said lands.

4. That the court order a partition of the lands, as provided by the statute, and set aside 21/32 of said lands for complainants and 11/32 for the defendant, Dr. Oscar W. Conner.

5. That the court order an accounting of the affairs of the Conner Company partnership consisting of the defandant, Dr. Oscar W. Conner, and the complainants' intestate, Sennett Conner.

6. That if the court should find that the complainants did not own an undivided 21/32 fee simple interest in said lands, in any event, a decree be entered establishing their ownership of an undivided 21/32 equitable interest in said land and the proceeds and income therefrom, and that the defendant, Dr. Oscar W. Conner, be held accountable as a quasi trustee or managing partner for his actions in the premises.

The defendant, Dr. O. W. Conner, Jr., filed a special demurrer to the amended bill of complaint; and the defendants, Grady Morgan and B. F. Banahan, likewise filed special demurrers. The defendants, Texas Company and Phillips Petroleum Company filed special de-

murrers and answers. In his special demurrer, the defendant, Dr. O. W. Conner, assigned six grounds for demurrer. The chief ground of demurrer was that the amended bill of complaint failed to state a claim that would support any right to the lands described therein as being owned by the complainants against defendant as a quasi-trustee or managing partner or otherwise, since the Memorandum of Agreement dated October 25, 1943, showed on its face that the defendant, Dr. O. W. Conner, was vested with unlimited discretion in disposing of the property described therein without obligation of any accounting therefor. The court overruled the special demurrer; and in its order overruling said special demurrer the court found that the Memorandum of Agreement upon which the demurrer based the defendants' claim of title to the property was actually a nullity, was wholly void and of no validity to vest any right, title or interest in and to the property in the said defendant, O. W. Conner, Jr., regardless of the intent of the parties, for the reason that the Memorandum of Agreement did not vest, at the time of its execution, any present interest in either party to the Memorandum of Agreement. The court also held that the Memorandum of Agreement was testamentary in character and was not witnessed in accordance with the statutes relating to the execution of wills and was therefore inoperative as a will and conveyed no interest at the death of Sennett Conner.

The defendant, Dr. O. W. Conner, filed his answer and a cross bill on March 12, 1957. In his answer the defendant admitted the ownership of the lands by O. W. Conner, Sr., at the time of his death in 1923. The defendant denied that Mrs. O. W. Mayfield, by her deed dated February 9, 1927, conveyed to the other heirs all of her interest in said lands; and the defendant averred in his answer that, to the extent that said instrument conveyed an interest in the nonparticipating royalty in oil, gas and other minerals, the conveyance was in trust for the grantor. The defendant also denied that W. F. Conner

conveyed all of his interest in the lands to Sennett Conner by deed dated January 3, 1930. The defendant averred in his answer that the facts concerning the execution of that instrument were as follows: That on January 3, 1930, W. F. Conner was in financial straits and required $5,000 to aid him in discharging his obligations, and that the said Sennett Conner advanced to him said sum, and that solely as security for the repayment thereof W. F. Conner executed the deed of that date, with the understanding and agreement that whenever said sum was repaid to Sennett Conner, said property would be reconveyed to the said W. F. Conner. The defendant further averred in his answer that the said Sennett Conner on December 7, 1936, executed a written memorandum under the terms of which the said W. F. Conner was entitled to receive, and his heirs after his death were entitled to receive, a reconveyance of said interest in said property upon the repayment to the said Sennett Conner of said $5,000 and two items of interest mentioned therein.

The defendant also denied that Mrs. O. S. Mayfield conveyed all of the interest which she had acquired from her mother to Sennett Conner by the deed dated August 30, 1937. The defendant alleged as to that instrument that, after the funeral of Mrs. O. W. Conner, the said Sennett Conner requested Mrs. O. S. Mayfield to convey the 1/16 interest in said property which she had inherited from her mother to him solely for the purpose of enabling him to handle said interest as expeditiously as he was handling the other interests for the benefit of all of the heirs, and that the deed of August 30, 1937, was executed by her pursuant to that request, it being the intention of the parties that such title should be held in trust for the said Mrs. O. S. Mayfield.

The defendant further alleged that after the death of the said W. F. Conner, the said Sennett Conner requested Mrs. Maude Conner and Frances Conner to convey the 1/64 interest owned by each of them to Sennett Conner and O. W. Conner, Jr.; that no consideration what-

ever was paid for that conveyance, and that said deed was executed with the intention of all of the parties that such title would be held in trust for the widow and orphan children of W. F. Conner, the deceased's brother of the grantees; that the said Sennett Conner requested that such deed be executed solely as a matter of convenience for the reason that he was still acting as managing partner of the property; that the said Sennett Conner also requested the said Mrs. Maude Conner, the mother of the two minor heirs of W. F. Conner, deceased, to institute a proceeding in the chancery court whereby a commissioner might be appointed to convey the interests of Jacquelyn Conner and Jack Michael Conner, minors, being an undivided 1/64th interest each in said property, to the said Sennett Conner and Dr. O. W. Conner; and that such request was complied with and effectuated by the deed dated January 15, 1942; that said conveyance was understood by all of the parties to be in trust for the purpose above set forth; and that no consideration whatever was paid for the execution of the deed of conveyance.

The defendant admitted that he had executed the oil, gas and mineral leases referred to in the amended bill of complaint, and that he had sold certain timber from the lands, and had conveyed a strip of land to the State Highway Commission to be used for highway purposes; and the defendant averred that all of said actions had been taken in accordance with the Memorandum of Agreement dated October 25, 1943. The defendant also averred that the said Memorandum of Agreement had been executed by the defendant and the said Sennett Conner for the reasons set forth therein, and that, whether the legal title to the property was vested in him by that instrument or not, the instrument was a valid declaration of trust and the defendant was ready, willing and able to execute the trust imposed upon him by said instrument. The defendant denied that the Memorandum of Agreement should be cancelled; and the defendant denied

that the complainants owned a 21/32 interest in the property. The defendant repeated the charge that the property in dispute was held in trust, and that the interest of the successors of Sennett Conner was not an undivided 21/32 interest, but only their equitable interest in the property belonging to the estate of O. W. Conner, Sr. The defendant denied that the complainants were the holders of the 1149 shares of capital stock of the First National Bank of Hattiesburg in their own right, and alleged that the bank stock was held in the name of Sennett Conner for heirs of O. W. Conner, Sr.

The defendant attached to his answer a cross bill, in which he reiterated the affirmative matters set forth in his answer relating to the trusts incident to the conveyance executed by Mrs. O. S. Mayfield to Sennett Conner on August 20, 1937, and the conveyance executed by W. F. Conner to Sennett Conner on January 3, 1930, and the conveyance executed by the heirs of W. F. Conner, deceased, to Sennett Conner and Dr. O. W. Conner in 1942. In his cross bill the defendant asked that a decree be entered adjudging him to be the managing partner or trustee of the lands and other property involved in this controversy, with full power and discretion to handle and manage the same, and that a master be appointed to take an accounting to ascertain the rights and indebtedness, if any, of the estate and the heirs of Sennett Conner, to the trust estate, and that the defendant be authorized to make distribution of the funds and property of the trust in accordance with the terms thereof. The defendant attached as exhibits to his answer and cross bill a copy of the Memorandum dated December 7, 1936, alleged to have been signed by Sennett Conner and found among his papers; and also a copy of the letter of transmittal which accompanied the Memorandum of Agreement of October 25, 1943, mailed to him by Sennett Conner for his signature.

The cross defendants, Mrs. Alma G. Conner and Lady Rachel Conner Briggs, filed an answer to the cross bill

of the defendant, Dr. O. W. Conner, Jr., and in their answer denied the material allegations contained in the defendant's cross bill. The cross defendants specifically denied that the deed executed by Mrs. O. S. Mayfield to the other heirs on February 9, 1927, conveyed the nonparticipating royalty in oil, gas and other minerals in or on the lands only in trust. The cross defendants also denied that the deed executed by W. F. Conner on January 3, 1930, was a deed in trust to secure an indebtedness owing by W. F. Conner to Sennett Conner. The cross defendants denied that the Memorandum of Agreement executed by Sennett Conner and O. W. Conner, Jr., on October 25, 1943, was a valid instrument, or that any trust existed as a result of the execution of said instrument. The cross defendants admitted that there was a partnership operation between O. W. Conner, Jr., and Sennett Conner, during a period of several years next preceding the death of Sennett Conner; but the cross defendants denied that any of the property of the estate of O. W. Conner, Sr., was held in trust by Sennett Conner, or that the operation of said property by Sennett Conner was conducted under a trust agreement. The cross defendants averred in their answer that the claims set forth in the defendant's cross bill relating to alleged trusts were barred by the 10-year statutes of limitation, Sections 746, 709, and 710, Mississippi Code of 1942, Recompiled, and also by Sections 729 and 743, Mississippi Code of 1942, Recompiled. The cross defendants also averred in their answer that the allegations of the defendant's cross bill relating to trusts based upon alleged oral agreements were barred by the Statute of Frauds (Sections 264 and 269, Mississippi Code of 1942); and that the cross complainant's claim for the recovery of the property sold by order of the chancery court was barred by the provisions of Section 745, Code of 1942, Recompiled.

After the filing of the cross defendants' answer to the defendant's cross bill, a petition was filed by Mrs. W. F.

(Maude) Conner, Mrs. Frances Conner Wright, Jacquelyn Conner and Jack Michael Conner, and Mrs. O. S. Mayfield, asking that the petitioners be allowed to intervene in said cause as codefendants to the amended bill, and an order was entered allowing said parties to intervene and to file such answers or cross bills as they might deem proper. An answer and cross bill was thereupon filed on behalf of the intervenors, Mrs. W. F. (Maude) Conner, Mrs. Frances Conner Wright, Jacquelyn Conner and Jack Michael Conner; and a separate answer and cross bill was thereupon filed on behalf of the intervenor, Mrs. O. S. Mayfield. In their answers and cross bills the intervening codefendants and cross complainants admitted the execution of the various instruments referred to in the pleadings, but qualified such admissions by affirmatively alleging that Governor Conner was, as to all of the properties referred to in the pleadings, a trustee acting for and on behalf of all of the heirs of his father, O. W. Conner, Sr., and the heirs of his mother, Mrs. O. W. Conner, Sr. The intervening codefendants and cross complainants then adopted for themselves the denials and allegations contained in the answer and cross bill of Dr. O. W. Conner, Jr., and asked that the relief prayed for in said cross bill be granted.

The complainants, Mrs. Alma G. Conner and Lady Rachel Conner Biggs, filed answers to the cross bills filed by Mrs. W. F. (Maude) Conner and others and by Mrs. O. S. Mayfield, as intervenors; and in their answer the complainants and cross defendants denied the material allegations of said cross bills, and in their answer the complainants and cross defendants also pleaded in defense of the allegations and claims of the cross complainants the above mentioned statutes of limitations, and also laches and estoppel, and denied that the cross complainants were entitled to any of the relief prayed for in their cross bills.

The cause was heard upon the amended bill of complaint, the answers and cross bills of the defendants and

the intervening codefendants, and other pleadings, and documentary and oral evidence offered on behalf of the respective parties, at the February and May 1958 terms of the court; and at the conclusion of the evidence the cause was taken under advisement for decision by the chancellor in vacation. A final decree was rendered by the chancellor on November 14, 1958; and from that decree the defendants and cross complainants mentioned above (other than Mrs. O. S. Mayfield) have prosecuted this appeal.

The record filed in this Court consists of ten volumes, including three volumes of exhibits. Many witnesses were called to testify during the hearing. It is therefore manifestly impracticable for us to undertake to review in detail the testimony of the witnesses or tabulate the contents of the numerous written instruments offered in evidence during the hearing; and no useful purpose would be accomplished by such undertaking.

All of the exhibits referred to in the pleadings, including the deeds mentioned in the complainants' deraignment of title, were introduced as evidence during the trial, and many facts alleged in the pleadings were admitted by the opposing parties. A more detailed statement must be made, however, concerning the contents of the Memorandum of Agreement dated October 25, 1943, which was filed as an exhibit to the amended bill of complaint, and the Memorandum dated December 7, 1936, which was attached as an exhibit to the answer of Dr. O. W. Conner; and there are also certain items of the testimony relating to the value of the lands and other property owned by the Conner Company, including the bank stock, and certain jewelry, which must be noted here as an aid to a proper understanding of the findings of the chancellor.

The Memorandum of Agreement dated October 25, 1943, which was signed and acknowledged by Sennett Conner and O. W. Conner in duplicate original copies, is as follows:

"MEMORANDUM OF AGREEMENT made and entered into this the 25th day of October, 1943, by and between SENNETT CONNER and O. W. Conner, witnesseth:

"WHEREAS, we, the parties hereto, are partners operating a partnership under the firm name of "The Conner Company", with domicile at Seminary, Mississippi, of which partnership the said Sennett Conner is the manager, and in which partnership the said Sennett Conner owns an undivided 21/32 interest and the said O. W. Conner owns an undivided 11/32 interest; and,

"WHEREAS, the said partnership is engaged in farming operations and owns certain personal property comprised chiefly of mules, farming equipment and farm products, and owes certain debts and obligations; and,

"WHEREAS, we jointly own in the respective shares herein before indicated the following described property situated in Covington County, Mississippi, to-wit:

* * * (Here follows a description of the lands described in the amended bill of complaint).

" * * * a portion of our said interest in said lands having been inherited from our father and mother, Mr. and Mrs. O. W. Conner, and the remainder of our respective interests in said lands having been acquired by us by purchase from our sister, Mrs. O. S. Mayfield, and our brother, W. F. (Jack) Conner and his heirs; and

"WHEREAS, over a period of years, from time to time, each of us, since the death of our father, has advanced various sums for the protection, development and preservation of said property, the totals of which said amounts have varied from time to time, the amount due the said Sennett Conner being $26,198.84, and the amount due the said O. W. Con-

ner being $1,677.58, as of the date October 22, 1943, and further advances will be made; and

"WHEREAS, it is the wish and desire of each of us that in the event of his death his estate shall not be involved with or interested in the ownership or operation of said partnership or any of said property or liable for the payment of any of the debts thereof;

"NOW, THEREFORE, in consideration of our mutual agreement herein contained, it is hereby agreed by and between us that in the event of the death of either of us the full and complete legal title to the above described lands, or so much thereof as may not have been previously disposed of, and all the personal assets of said partnership, both those now owned or that may be hereafter acquired, shall immediately, upon the happening of such contingency, become vested in the surviving partner, who shall proceed to manage, operate or sell or otherwise dispose of said lands and other property as he shall see fit, and disburse or retain any receipts therefrom as, if and when he sees fit, all just as his own property, without obligation of any accounting therefor, and the said surviving partner shall forthwith assume all obligations and secure the release of the estate and heirs of the deceased partner from all debts and obligations of said partnership whatsoever.

"It is the purpose and intention of each of us to separate wholly his interest in the aforementioned property from any and all other interests or property he may own at the time of his death.

"Executed in duplicate on the date hereinbefore mentioned.

/s/ SENNETT CONNER
/s/ O. W. CONNER".

The Memorandum dated December 7, 1936, a copy of which was attached as an exhibit to the answer of Dr. O. W. Conner, was a typewritten instrument found by Robert A. Biggs, the husband of Lady Rachel Conner Biggs, among the papers of Governor Conner after Governor Conner's death. The instrument itself was signed by Governor Conner, but neither acknowledged before a notary public nor attested by witnesses, and is in words and figures, as follows:

"BE IT REMEMBERED,

"That on the 3rd day of January, 1930, I advanced to W. F. (Jack) Conner the sum of Five Thousand Dollars ($5,000), purely as an accommodation to him, to assist him in discharging certain obligations he had incurred in his mercantile operations, in which operations I had no interest. Cancelled check evidencing this advance is hereto attached.

"The sum advanced by me was borrowed by me from the First National Bank, Hattiesburg, Mississippi, and I paid interest on it at the rate of 8% per annum from January 3, 1930, to May 20, 1932. On October 24, 1931, I paid $91.30 on the principal and $283.70 interest on this loan, and on April 2, 1932, I paid $198.54 interest on this loan. These items were charged to W. F. or Jack Conner on the books of the Conner Company. I do not find that other interest and principal payments were charged to him and credited to me on the books of the Conner Company. He has not paid to me anything on the amount I advanced as principal and the interest charges on the loan I negotiated with the bank. I paid the note at the bank on May 20, 1932. During the years since this advance was made to W. F. Conner, I have borrowed money and paid 8% interest thereon.

"Under date of January 3, 1930, in order to protect me as far as he could, W. F. (Jack) Conner con-

veyed to me all his interest in the lands, personal property, accounts and assets owned by the estate and heirs of our father, O. W. Conner and of the Conner Company, which up to that time was a partnership composed of Mrs. O. W. Conner, W. F. Conner, O. W. Conner, Jr., and myself, which replaced the administration of the estate on my discharge as administrator of the Estate of O. W. Conner.

"Since the 3rd day of January, 1930, when this conveyance was executed, the Conner Company has operated as a partnership composed of Mrs. O. W. Conner, O. W. Conner, Jr., and myself. * * * The moneys advanced to W. F. Conner by me, * * * were not derived directly or indirectly from the Estate of O. W. Conner, but came from my personal funds.

"It is my wish and desire that his undivided one-fourth interest in the property conveyed to me by W. F. Conner, excepting any portion that has been sold or that may be sold, and the proceeds thereof used for the operations of the Conner Company, shall be returned to the said W. F. Conner as, if and when he pays to me the amount due me by him, including the interest, and to the Conner Company an amount equal to one-fourth its obligations to others at the time such settlement is made by the said W. F. Conner. In other words, while the conveyance to W. F. Conner by me was an absolute conveyance, I am willing for him to recover or repurchase his interest on these conditions at any time he may exercise this option before said property is sold.

"* * * I make this statement and am placing it in my bank lockbox for the guidance and assistance of any who should be called upon to adjust these matters in my absence.

"This statement is made and signed on this the 7th day of December, A. D., 1936.

/s/ Sennett Conner."

The books of account and the oral testimony showed that the unpaid balance of the Federal Land Bank indebtedness against the Conner lands at the time W. F. Conner executed the deed conveying his undivided ¼ interest in the lands and other property of the Conner Company to Sennett Conner on January 3, 1930, was approximately $16,500; and the balance still remaining unpaid at the time of W. F. Conner's death in 1941 was approximately $7,500. The final payments were not made until 1946. According to statements contained in the petition filed by Mrs. Maude Conner, as mother and next friend of W. F. Conner's two minor heirs, in January 1942, for a sale of the interests of the two minor heirs to Sennett Conner and Dr. O. W. Conner, there was due to Sennett Conner the sum of $21,000 on account of various sums of money advanced by him for the payment of taxes on the lands and for the payment of interest and principal installments due under the Federal Land Bank mortgages, and for the preservation and protection of the said property.

H. L. Pickering, a witness for the complainants, who worked for the Federal Land Bank of New Orleans from 1932 until 1937 and sold real estate for the Federal Land Bank, testified that he was familiar with the Conner property, and that the reasonable market value of the Conner lands, including the timber, in 1937 was $10 an acre. Pickering stated that during the years 1932 to 1937 timber was selling for "an awful lot less money than it did in subsequent years", and land in Covington County which the Federal Land Bank was selling in 1937 was selling at $5 to $10 an acre. Roy Boteler, a former resident of Seminary, who was a business associate in various enterprises with Governor Conner, testified that he bought 100 acres of land of similar character and situated near the Conner lands at $5 per acre. Estus Hudson, who testified that he lived at Hattiesburg and was secretary and treasurer of the Federal Savings & Loan Association, which was engaged in the business of making farm loans in Covington County and elsewhere with-

in a radius of 50 miles of Hattiesburg, stated that he was an appraiser of the association, and that in his opinion the reasonable market value of the Conner lands at the time of the trial was $75 per acre.

As to the 1149 shares of bank stock of the First National Bank of Hattiesburg mentioned in the pleadings, Robert A. Biggs testified that the number of shares of the bank stock at the time of Governor Conner's death was 69 shares of the par value of $100 each; that the original stock certificates representing the 69 shares standing in the name of Sennett Conner were found after Governor Conner's death in his lockbox at Hattiesburg; and that on the envelope there appeared in Governor Conner's handwriting a list of stock certificates showing a total of 57½ shares, with the notation "10 shares are the personal property of Sennett Conner, 47½ shares came from the Estate of O. W. Conner, and should be applied to the debts of the Conner Company to Sennett Conner. June 21, 1946." Biggs stated that inside of the envelope there were found certificates for 69 shares of the capital stock of the bank, all issued in the name of Sennett Conner. These certificates were surrendered later, and Stock Certificate No. A-336 for 690 shares of the capital stock of said bank, of the par value of $10 each, dated August 31, 1956, was issued in the name of "Estate of Sennett Conner, deceased"; and Stock Certificate No. A-31 for 172 shares of the capital stock of said bank, of the par value of $10 each, dated August 8, 1956, was issued in the name of "Estate of Sennett Conner." The remaining Stock Cetrificate No. A389 for 287 shares of the capital stock of said bank, represented additional shares purchased by Mrs. Alma G. Conner, as administratrix, on September 19, 1956, pursuant to the pre-emptive right given shareholders of the original stock. The amount paid for the additional shares was $7,175. Biggs testified that of the original shares Governor Conner owned 12 shares definitely; that in the reissuance of the stock ten shares were issued for each one original share;

that Governor Conner's estate owned 120 of the 690 shares of the new stock, leaving 570 shares, the ownership of which was to be determined by the court. Biggs also stated that Mrs. Alma G. Conner, as administratrix, had deposited the dividends from the bank stock in the Estate Account, and at the end of each year she had taken 57/69 of each dividend and deposited it in the Conner Company account carried in the name of Mrs. Sennett Conner, Agent.

The chancellor found that Mrs. O. S. Mayfield, by her deed of February 9, 1927, conveyed her interest in the estate of her father, O. W. Conner, deceased, to Mrs. O. W. Conner, Sennett Conner, W. F. Conner and O. W. Conner, Jr., and that by her deed dated August 20, 1937, she conveyed all the interest in the subject properties which she had inherited from her mother to Sennett Conner, and that all affirmative pleadings filed on her behalf should be dismissed.

The chancellor found that the consideration paid by Sennett Conner for the warranty deed executed to him by W. F. Conner on January 3, 1930, was a fair and adequate consideration at the time the conveyance was made. The chancellor found that the Memorandum bearing date of December 7, 1936, which was signed by Governor Conner, but never acknowledged or delivered to anyone by him, should be admitted in evidence, not as proof of an option to repurchase or an agreement to reconvey, but as evidence of the circumstances surrounding the execution of the deed of January 3, 1930. The chancellor found that W. F. Conner moved from Seminary to Jackson, Mississippi, with his family about two years after the deed was executed and resided there until his death in 1941, and that there was ample evidence in the record to show that Sennett Conner had possession and control of the lands described in the deed during that time. The chancellor found that the evidence failed to show that W. F. Conner became indebted to Sennett Conner as a result of the transaction of January 3, 1930, and there

was no evidence of a pre-existing debt; that the deed of that date was an absolute conveyance and not a mortgage; and that the Memorandum dated December 7, 1936, was insufficient to meet the burden of proof required of the defendants and cross complainants to have the deed declared to be a mortgage.

The chancellor found that the deed executed by Mrs. Maude Conner and Mary Frances Conner to Sennett Conner and O. W. Conner, Jr., on January 3, 1942, was in fact an absolute conveyance and not a conveyance in trust; and that the conveyance of the interests of the minor children of W. F. Conner to Sennett Conner and O. W. Conner, Jr., by a special commissioner, pursuant to a decree of the Chancery Court of Covington County, rendered on January 13, 1942, was neither void nor a conveyance in trust, as the defendants and cross complainants contended. The chancellor found that the Chancery Court of Covington County had jurisdiction to act in the matter by virtue of its constitutional jurisdiction over minor's business; that the evidence showed that the consideration stated in the special commissioner's deed was paid and possession of the lands taken by the grantees; that the parties acted in good faith in regard to the transaction; and that, although defects and irregularities appeared in the proceedings then had, the complainants in this case were entitled to the protection of Section 745 of the Mississippi Code of 1942, Recompiled, which provided a limitation period of two years after possession taken by the purchaser for the bringing of an action to recover property sold by order of the chancery court, and which contained no saving clause in favor of the minors.

The chancellor found that the 1149 shares of bank stock of the First National Bank of Hattiesburg referred to in the pleadings were owned by the heirs of Sennett Conner and Dr. O. W. Conner, Jr., with proportionate interests as follows: That the heirs of Sennett Conner were the exclusive owners of a 12/69 interest in the 1149

shares, and that the remaining 57/69 interest in the 1149 shares was owned by the heirs of Sennett Conner, who were entitled to a 21/32 part thereof, and Dr. O. W. Conner, Jr., who was entitled to a 11/32 part thereof; and that, since 287 shares of the stock had been purchased by the heirs of Sennett Conner by virtue of pre-emptive rights given by the bank to the shareholders of record at the time the stock was issued for the sum of $7,175, O. W. Conner, Jr., should be required to pay to the heirs of Sennett Conner an amount of money equal to 11/32 of said purchase price; and that the dividends from said bank stock should be apportioned according to the ownership as set out above. The chancellor found that the diamonds and other jewelry, referred to in the pleadings, which were owned by Mrs. O. W. Conner, Sr., at the time of her death, should be sold and the proceeds derived from said sales divided among the heirs of Mrs. O. W. Conner, Sr., in accordance with the laws of descent and distribution. The chancellor made no adjudication concerning the various accounts of the Conner Company, but left those matters open for further consideration and final determination after the taking and statement of an account by a special master as to all rents, issues and profits received by or for The Conner Company, The Conner Trust, Sennett Conner, Mrs. Alma G. Conner, Lady Rachel Conner Biggs, Dr. Oscar W. Conner, Trustee, Dr. Oscar W. Conner, and by any one or more of them, pertaining to the operations of the subject lands and properties, and the indebtedness of any one or more of them to the other or others.

The decree rendered by the chancellor on November 14, 1958, was based upon the above mentioned findings of the chancellor. The court, in its decree, confirmed the title of the complainants and cross defendants in and to an undivided 21/32 interest in the lands described in the amended bill of complaint, and declared Dr. O. W. Conner, Jr., to be the owner of the remaining 11/32 interest in said lands; and the court cancelled all claims

of title asserted by the defendants, intervenors and cross complainants in and to the undivided 21/32 interest in said lands owned by the complainants. The remaining provisions of the decree followed in general the findings of the chancellor, as noted above.

The first point argued by the appellants as ground for reversal of the decree of the lower court is that the chancellor erred in refusing to hold that the deed from W. F. Conner to Sennett Conner dated January 3, 1930, was in fact a mortgage only. But we think there was no error in the chancellor's refusal to hold that the deed referred to was in fact a mortgage.

Section 272, Code of 1942, Recompiled, which appeared as Section 3333, Hemingway's Annotated Mississippi Code, 1927, provides as follows:

"A conveyance or other writing absolute on its face, where the maker parts with the possession of the property conveyed by it, shall not be proved, at the instance of any of the parties, by parol evidence, to be a mortgage only, unless fraud in its procurement be the issue to be tried."

It is admitted that the burden of proof in this case rested on the appellants to show that the deed in question was in fact a mortgage only given to secure a debt, and that proof of that fact, if made at all, could not be made by parol evidence, under the terms of the statute, unless it were shown that the maker had not parted with possession of the land conveyed, or that there was fraud in its procurement. No fraud was alleged or proved in this case; and there is no substantial evidence in the record to show that W. F. Conner remained in possession of the property conveyed.

The evidence shows that Jack and his family lived in their own home in the Town of Seminary at the time the deed was executed, and that Jack owned and operated a store at Seminary at that time. But Jack discontinued his mercantile business at Seminary soon thereafter, and Jack and his family moved to Jackson in 1933. Jack ac-

cepted employment as manager of a bottling company in Jackson about that time, and he and his family continued to make their home in Jackson until Jack's death in 1941. It is true that Dr. Conner, who lived in Jackson at that time, testified that after Jack moved to Jackson he continued to help Governor Conner with the management of the Conner property, and Mrs. O. W. Conner testified that, "when Governor Conner asked Jack to go down and do something, Jack would do it." But Roy Boteler, who had formerly served as railroad station agent at Seminary, testified that he never saw Jack on the Conner property near Seminary at any time after he moved to Jackson. Joe Bullock, who lived on the Conner lands near Seminary in 1932 and for a period of several years thereafter, and who was called to testify as a witness for the appellants, stated on cross-examination that, as far as he knew, "until Governor Conner died, Governor Conner was the only man looking after the operations of the Conner farm." There is no substantial evidence in the record to show that Jack ever claimed any interest in the lands after the date of the execution of the above mentioned deed, other than the undivided 1/16 interest which he inherited from his mother in 1937.

The evidence clearly indicates that Governor Conner's possession and control of the lands during the entire time from January 3, 1930, to June 27, 1941, was for the use and benefit of the owners of the record title; and that all parties so understood the matter. The partnership income tax returns filed by Governor Conner show that Governor Conner so understood the matter. The deed executed by Mrs. Maude Conner and Mary Frances Conner to Governor Conner and Dr. O. W. Conner, Jr., in January 1942, and the petitions filed by Mrs. Maude Conner, as mother and next friend of Jack's two minor children for the sale of their interests in the lands to Sennett Conner and Dr. O. W. Conner, Jr., and the supplemental petition filed by Sennett Conner and Dr. O. W. Conner, Jr., in that proceeding, show that all of the parties recog-

nized the fact that Jack Conner owned only an undivided 1/16 interest in the lands at the time of his death, being the undivided 1/16 interest which he had inherited from his mother in 1937.

■■ But the appellants' attorneys say that Governor Conner's possession and control of the property was that of a managing cotenant holding for and on behalf of all of the cotenants, and that there is no testimony in the record to show that there was any change of possession after the execution of the deed by Jack to Governor Conner on January 3, 1930. That fact, however, is in our opinion not a controlling circumstance in this case. This is not a case where a managing cotenant, without the consent of the others has bought in an outstanding adversary title and asserted it for his exclusive benefit. It is well settled that one tenant can purchase the share of another just as he would buy property from a stranger. 14 Am. Jur., 130, Cotenancy, par. 62. ■■ A sale of an undivided interest by a tenant in common severs the relationship between himself and his cotenant. 86 C. J. S., 375, Tenants in Common, par. 14. ■■ After the execution of the deed by Jack to Governor Conner on January 3, 1930, Governor Conner was presumed to be in possession of the undivided ¼ interest which he had purchased from Jack by virtue of the warranty deed which Jack had executed. Jordan v. Jordan, 145 Miss. 779, 111 So. 102. ■■ The burden of proof, as stated by this Court in Jordan v. Jordan, supra, was on those who sought to introduce parol proof, under the statute to show that the grantor in the deed remained in possession after the execution of the deed; and the appellants in this case, as in the Jordan case, failed to make such proof.

■■ But if the evidence in this case concerning the possession of the property had shown that Jack remained in possession of a part of the land after the execution of the deed to Governor Conner in 1930, the appellants would not have been entitled under the proof to have

the deed adjudged to be a mortgage, for the reason that the evidence offered on behalf of the appellants, as the chancellor found, was insufficient to prove that the deed was intended as a mortgage.

The nature of the conveyance executed by W. F. Conner to Sennett Conner on January 3, 1930, was fixed on that date; and the only evidence of the actual agreement between them at the time the deed was executed is the warranty deed itself, which is absolute on its face, and which recites a consideration of $5,000, "cash in hand paid, receipt of which is hereby acknowledged," and the cancelled check of Governor Conner, payable to the order of W. F. Conner, in the amount of $5,000, which was endorsed by W. F. Conner and paid by the bank upon which it was drawn. No note was executed by Jack evidencing a debt. No ledger entry was made on the books by Governor Conner showing a charge against Jack for the $5,000; and there is no evidence of any collateral agreement entered into at the time the deed was executed which might indicate that a debtor-creditor relationship was intended to be created as a result of the transaction evidenced by the deed and the check.

██ Neither does the Memorandum dated December 7, 1936, which was admitted in evidence, as the chancellor stated, "not as an instrument of option or conveyance, but rather as evidence as to the details and circumstances surrounding the deed of January 3, 1930," contain language signifying the existence of a debtor-creditor relationship at the time the Memorandum was written. The recitals of the instrument cannot be construed as an acknowledgment in writing by Governor Conner that the deed referred to was intended as a mortgage only. The writer apparently exercised unusual care to avoid the use of language which might indicate a debtor-creditor relationship. Nowhere in the instrument is the $5,000 which was paid to Jack referred to as a "loan", which Jack was obligated to repay. There is nothing in the instrument to indicate that Governor Conner had agreed

that Jack should have a *right* to repurchase the property upon the terms and conditions therein stated, or that Governor Conner had *obligated* himself at any time to reconvey the property to Jack or Jack's heirs, upon the repayment to him of the purchase price. And it is reasonable to assume that if Governor Conner had *obligated* himself to reconvey, he would have said so. The Memorandum was never delivered, and was therefore not intended to create an obligation which did not exist at the time it was written. The recitals of the Memorandum, when considered in their entirety, indicate nothing more than Governor Conner's willingness for Jack to repurchase, upon the terms and conditions therein stated, the undivided ¼ interest in the property which he had conveyed to Governor Conner several years before the Memorandum was written.

But there are other facts and circumstances which are of even more importance in the determination of the issue which we are now considering than the facts mentioned in the next preceding paragraph. The testimony as a whole clearly shows that neither Governor Conner nor Jack treated the deed dated January 2, 1930, as a mortgage to secure a debt; and there is no proof that a legal obligation to repay existed. Governor Conner never obtained a note or other written acknowledgement from Jack evidencing a debt; and there is no evidence of any demand by Governor Conner for repayment of the $5,000, or of any payment by Jack of principal or interest on a loan of $5,000, at any time after the execution of the deed. It is not shown that Jack ever offered to repay the $5,000, or that Jack ever requested that he be permitted to redeem the interest in the property which he had conveyed to Governor Conner. After Jack's death in 1941 Governor Conner and Dr. Conner purchased the undivided 1/16 interest in the lands which Jack had inherited from his mother, and no claim was made at that time by any member of Jack's family that Jack had any interest in the land other than the undivided 1/16 inter-

est which was being conveyed to Governor Conner and Dr. Conner by Jack's heirs by the two separate deeds hereinabove mentioned.

The Memorandum of December 7, 1936, as the chancellor stated, was not admissible as proof of an option to repurchase, or an agreement to reconvey, for the reason that it was never delivered to anyone. But if the Memorandum had been admissible as proof of an agreement to reconvey and had shown an agreement to reconvey, the agreement to reconvey would not have converted the deed into a mortgage, for the reason that there was no proof that a legal obligation to repay existed.

In Dixon v. Wright, 175 Miss. 191, 166 So. 374, the Court held that, where a bill of complaint sought to have a deed, which had been executed in connection with a contemporaneous written agreement giving the grantor an option to repurchase, declared to be a mortgage, and the bill contained no allegation of fraud, the statute (Section 3351, Miss. Code of 1930, Section 272, Miss. Code of 1942, Recompiled), barring parol evidence to show that the instrument constituted a mortgage, was applicable; that the essence of a "mortgage" is that it stands as security for a debt which the mortgagor remains under obligation to pay, and, whenever no such obligation exists, an agreement to reconvey property is not a "mortgage" but a mere privilege of repurchase. In its opinion in that case the Court said: "We know of no better definition of a mortgage than that given in Magee v. Catching, 33 Miss. 672. The court there said that the essence of a mortgage was that it stood as security for a debt which the mortgagor remained under legal obligation to pay, and, whenever no such obligation existed, an agreement to reconvey the property would not be a mortgage, but a mere privilege of repurchase. * * **."

It is true that Dr. Conner testified in this case that Sennett had told him that Jack executed the deed of January 3, 1930, as security for a loan, and that upon repayment of the loan Jack would be reinstated. But, as stated

above, Governor Conner, in the Memorandum of December 7, 1936, did not refer to the $5,000 as a ''loan''; and there is no proof in the record to show that Jack ever treated the advancement as a loan. Although Jack lived eleven years after the deed was executed, he never made any payments on the so-called ''loan'', and no payment was ever demanded by Governor Conner. It could not be seriously contended that Governor Conner, under the facts disclosed by the record, could have maintained an action against Jack during his lifetime to recover the $5,000, with interest thereon, if he had undertaken to treat the same as a debt, or, if Jack had left a valuable estate, that Governor Conner could have probated and enforced payment of a claim against his estate for the $5,000 with interest thereon for a period of eleven years.

██ ''It has generally been held that, where a deed is made for a consideration paid at the time, whether the payment is made in cash or by the surrender and satisfaction of a precedent debt, an agreement on the part of the grantee to allow the vendor to repurchase the property at a future day, for the same or an advanced price, does not of itself convert the transaction into a mortgage, at least where the conveyance extinguishes the debt and the parties intend such result, or where the grantor is under no obligation to repurchase the property.'' 59 C. J. S., 65, 66, Mortgages, par. 28.

In Jones v. Jones, 226 Miss. 378, 84 So. 2d 414, the Court said:

''The rule is well settled that, 'Deeds and written contracts are deemed to express the real intentions of the parties, until the contrary is established by convincing proof, * * * and a party alleging that a deed, absolute and unconditional in form, was in effect a mortgage, must meet and overcome the presumption which the law raises from the face of the papers, namely, that the instrument is in legal effect just what it purports to be; * * **. This presumption is strengthened by lapse of time, so that, if a

very long period elapses before the grantor sets up his claim that the instrument should be considered as a mortgage, the clearness and weight of the evidence which is required of him will be correspondingly increased.' 59 C. J. S., p. 82, Mortgages, par. 48 a. * * * In Jordan v. Jordan, 145 Miss. 779, 111 So. 102, this Court said: 'When it is sought to destroy the sanctity of an instrument, such as a deed, by parol proof, and change its form from the absolute to the conditional, the proof necessary to alter or change the written instrument must be clear, unequivocal and convincing.''

We think that the proof offered on behalf of appellants in the case that we have here to establish their claim that the deed executed by Jack to Governor Conner on January 3, 1930, was in fact a mortgage only, was neither clear nor convincing, and that there was no error in the chancellor's refusal to hold that the conveyance was a mortgage only.

■■ It is next argued on behalf of the appellants that the court erred in refusing to hold that the deed executed by Mrs. Maude M. Conner and Mary Frances Conner to Sennett Conner and O. W. Conner, Jr., on January 3, 1942, and the deed executed by S. O. Herrington, Special Commissioner of the Chancery Court, to Sennett Conner and O. W. Conner, Jr., on January 13, 1942, conveyed to the grantees only the legal title to the undivided 1/16 interest in the land owned by the the heirs of W. F. Conner, deceased, to be held in trust for the benefit of said heirs. But we think there is no merit in that contention. There is no proof in the record which would support a finding that the deed executed by Mrs. Maude Conner and Mary Frances Conner on January 3, 1942, conveying their interest in the lands to the grantees therein named, or the deed executed by S. O. Herrington, Special Commissioner of the Chancery Court, on January 15, 1942, conveying the interests of the two minors heirs, to the above named grantees, was a deed which con-

veyed to the grantees only the legal title to the lands to be held in trust for the use and benefit of the grantors.

It is also argued on behalf of the appellants that the deed executed by S. O. Herrington, Special Commissioner of the Chancery Court, conveying the interests of the two minor heirs of W. F. Conner, deceased, in said lands to the above named grantees, was null and void because of certain irregularities and defects in the proceedings of the court in Cause No. 715 for the sale of the undivided interests of said minors in said lands, and that the chancellor should have so held. But after a careful examination of the record of those proceedings, which was offered in evidence in this case, and the chancellor's findings on the issue thus presented, we think that it cannot be said that the chancellor erred in his holding that the complainants in this case were entitled to the protection of Section 745, Mississippi Code of 1942, Recompiled, which provides a limitation period of two years within which suit may be brought to recover property sold by order of the chancery court, and that the defendants and cross complainants were barred by the terms of said statute of their right to attack the validity of the sale of the interests of said minors. Neely v. Craig, 162 Miss. 712, 139 So. 835, and cases cited.

The next point argued by the appellants' attorneys is that the chancellor erred in refusing to hold that the relationship of Governor Conner as managing cotenant or partner toward the other cotenants after the death of his father was that of a trustee of an open, acknowledged and subsisting trust, and that such relationship continued after the execution of the deed of conveyance by Jack Conner to Governor Conner on January 3, 1930, and after the execution of the deeds whereby Governor Conner and Dr. Conner acquired the inherited interests of Jack's heirs in 1942. But we think there is no merit in that contention.

It is true that the law recognizes that there exists between cotenants a peculiar relationship of mu-

tual trust and confidence in respect of the common estate. 14 Am. Jur., 78, Cotenancy, par. 4. One tenant in common will not be permitted to acquire title to, or an interest or claim in, the common property inequitably solely for his own benefit or to the exclusion of his cotenants. 86 C.J.S., 422, Tenancy in Common, par. 59 a. But the relation of mutual trust and confidence existing between cotenants does not preclude them from contracting with each other in regard to all ordinary matters, including the subject matter of the cotenancy itself.

■■ Accordingly, it is well settled that in the absence of any prohibitory provisions in the instrument creating the relationship, one cotenant can purchase the share of another just as he would buy property from a stranger. 14 Am. Jur., 130, Cotenancy, par. 62, and cases cited. In transactions of sale of their interests, cotenants do not stand in a relationship of mutual trust and confidence toward each other, but deal as adverse parties. 86 C.J.S., 463, Tenancy in Common, par. 71.

■■ Governor Conner was not at any time a "trustee" in his relationship to the lands involved in this litigation. He was the owner of only an undivided interest in the lands as a tenant in common with the other cotenants, each of whom held title to an undivided interest in the land in fee simple. There were changes in the ownership of the several interests from time to time between the death of O. W. Conner, Sr., in 1923, and the death of Governor Conner in 1950. But there was no separation at any time of the legal estate from the equitable-estate and the beneficial enjoyment; and there can be no trust when both the legal title and the beneficial interest are in the same person. 54 Am. Jur., 46, Trusts, par. 35. ■■ Governor Conner was the managing cotenant in possession and control of the lands and the managing partner in the farming operations, and in both capacities he was under duty to act in the utmost good faith in his dealings with the other cotenants. But he was not precluded from purchasing the shares

of the other cotenants; and he violated no duty owing by him to Jack when he purchased Jack's undivided ¼ interest in the property in 1930, for the sum of $5,000, which the chancellor found was a fair and adequate consideration for the conveyance of Jack's interest in the property; and he violated no duty which he owed to Jack's heirs when he and Dr. Conner purchased from Jack's heirs in 1942 the undivided 1/16 interest in the lands which Jack had inherited from his mother.

■ ■ To establish a "constructive trust," the appellants in this case would have been required to show fraud, actual or constructive, or abuse of confidence, which the appellants neither alleged nor attempted to prove. ■ ■ To establish their claim to a "resulting trust" the appellants were required to prove facts and circumstances showing that it was the intention of the parties at the time the conveyances were executed that the beneficial interest was not to go or be enjoyed with the legal title. Saulsberry v. Saulsberry, 232 Miss. 820, 100 So. 2d 593. Pomeroy's Equity Jurisprudence, Vol. 4, Fifth Edition, p. 62, par. 1031.

■ ■ This Court has held in numerous cases that proof of facts relied on to establish a constructive or resulting trust in a case of this kind must be clear and convincing. Moore v. Crump, 84 Miss. 612, 37 So. 109; Coleman v. Kierbow, 212 Miss. 541, 54 So. 2d 915; Stovall v. Stovall, 218 Miss. 364, 67 So. 2d 391; Summer v. Summer, 224 Miss. 273, 80 So. 2d 35. And the general rule is that oral evidence offered to prove such facts must be received with caution. Indeed, "So reluctant are the courts to ingraft a trust by parol on the legal title to real estate, or to enforce an alleged parol trust in personal property, that there is perhaps no better-established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence." 54 Am. Jur., 478, Trusts, par. 620.

■ ■ The appellants' claim that there was an open acknowledged and subsisting trust as to Jack's former

interest in the lands cannot be reconciled with the recitals of the sworn petition filed by Mrs. Maude Conner, as mother and next friend of the two minor heirs of Jack Conner, in Cause No. 715, in the Chancery Court of Covington County, and the recitals of the supplemental petition of Governor Conner and Dr. Conner, filed in that proceeding. But if there were any doubt in our minds, from the facts and circumstances stated above, as to the nature of the deed executed by Jack to Governor Conner on January 3, 1930, or the deeds executed by and on behalf of Jack's heirs in 1942, that doubt would be removed by the recitals contained in the Memorandum of Agreement of October 25, 1943, in which Governor Conner and Dr. Conner stated that on that date they were partners operating under the firm name of ''The Conner Company,'' in which partnership ''the said Sennett Conner owns an undivided 21/32 interest,'' and the said O. W. Conner owns an undivided 11/32 interest, and that they jointly owned in the respective shares therein before indicated the lands described in the Memorandum of Agreement. No where in said instrument, or in the letter of transmittal written by Governor Conner to Dr. O. W. Conner, Jr., dated October 22, 1943, is reference made to W. F. Conner's heirs having any interest in said lands, either legal or equitable.

 ██ It is next argued that the court erred in holding that the Memorandum of Agreement dated October 25, 1943, which was executed by Governor Conner and Dr. O. W. Conner while Dr. Conner was in the Military Service, and which constituted the basis of Dr. Conner's claim of title to the property, as trustee, was wholly void and of no validity to vest title to the property in the said O. W. Conner, Jr., regardless of the intent of the parties. But we think there was no error in the chancellor's holding that the instrument was testamentary in character and could have no effect as a deed in trust to take effect at the death of either of the parties.

The appellants cite in support of their contention that the instrument was a valid instrument the case of Tanner v. Foreman, 212 Miss. 355, 54 So. 2d 483. But in the Tanner case the instrument was a deed, which the court in its opinion said, ''by its plain terms immediately vested the title to the land in the grantee, subject only to the rservation of the right of possession in the grantor, J. R. Foreman, so long as he lived.'' It can be readily seen that the instrument in that case was free from the infirmity pointed out in the chancellor's opinion overruling the demurrer in this case.

The Memorandum of Agreement, dated October 25, 1943, by its terms, was to be effective only in the event of the death of one of the parties, and was to be effective then only as to so much of the property as might not have been previously disposed of by the parties. The power attempted to be conferred in the instrument on the survivor was in its nature a testamentary power which was to be effective only at the death of the party dying first. The instrument did not purport to convey any present interest in any property, or any interest in any specific property to vest in the future. On this point we think the case is controlled by the decision of this Court in Thomas v. Byrd, 112 Miss. 692, 73 So. 725. In that case the Court held, as the chancellor stated in this case, that the instrument was testamentary in character, and could have no operation as a deed.

It is next argued that the chancellor erred in his holding that the heirs of Jack Conner had no interest in the 57/69 part of the bank stock of the First National Bank of Hattiesburg, which was awarded under the chancellor's decree to the complainants, as the owners of a 21/32 interest therein, and Dr. O. W. Conner, as the owner of an 11/32 interest therein. We think this contention is well founded. The record shows that Jack was the owner of an undivided 1/16 interest in said 57/69 part of the bank stock at the time of his death; and that interest was not included in the deeds executed

by and on behalf of Jack's heirs in 1942 conveying to Governor Conner and Dr. Conner their undivided interests in the lands. There is nothing in the record to show that Jack's heirs had been divested of title to their equitable interest in the bank stock at the time of the filing of the bill of complaint in this cause. Governor Conner recognized Jack's ownership of said undivided 1/16 interest in said bank stock, although the dividends received after Jack's death continued to be deposited to the credit of the Conner Company. That part of the decree relating to the ownership of the 57/69 part of the bank stock will therefore be modified so as to show the ownership of a 1/16 interest in said 57/69 part of said bank stock as being vested in the above named heirs of W. F. Conner, deceased, with the right to share in the additional shares purchased by Mrs. Alma G. Conner and Lady Rachel Conner Biggs under the pre-emptive right given to share holders, upon payment of the pro rata part of the $7,175 purchase price referred to in the decree; and the decree of the lower court as thus modified will be affirmed.

It is next argued that the chancellor should have decided certain issues raised in the pleadings and during the hearing relating to old accounts, shown on the books of the Conner Company prior to 1930, against certain of the children of O. W. Conner, Sr. But those issues must be left for proper consideration and determination by the chancellor upon the remand of the case to the lower court; and we express no opinion at this time on any of the questions raised concerning the accounts mentioned.

For the reasons stated above the decree of the lower court will be modified, as indicated above, so as to show the ownership by the heirs of W. F. Conner, deceased, of a 1/16 interest in the 57/69 part of the bank stock, and as thus modified, the decree will be affirmed, and the cause will be remanded to the lower court for

such further proceedings as may be necessary and proper.

The costs of this appeal will be apportioned between the parties, two-thirds against the appellants and one-third against the appellees.

Affirmed in part, modified and affirmed in part, and remanded.

*Roberds, Lee, Holmes* and *Ethridge, JJ.*, concur.